Harry Edelstein, J.
The petitioner in this summary proceeding for unpaid rent seeks as additional rent from the respondents $100 in attorney’s fees. The full amount of the rent demanded by the petitioner was paid by the respondent Frank Tomaselli on the return date specified in the notice of petition, and the petitioner does not demand court costs and disbursements. Therefore, the sole question before the court is the respondents’ liability for the petitioner’s attorney’s fees in the amount of $100.
In civil actions, attorney’s fees are incidents of litigation, and, absent statutory authority or contractual obligation, are not recoverable. (City of Buffalo v Clement Co., 28 NY2d 241, 262-263; Klein v Sharp, 41 AD2d 926 [all concur].) In the case at bar, the petitioner’s right, if any, to recovery of attorney’s fees is based on clause 32 of the agreement of lease, dated the 29th day of August, 1974, between the parties. Clause 32 of the lease provides: "Notwithstanding any provision of this agreement to the contrary, in the event that the tenant defaults with respect to any of the covenants of this lease, the tenant agrees to pay forthwith as additional rent to the landlord $100.00 attorney’s fees, plus court costs and disbursements, in the [sic] connection with any action or proceeding instituted by the landlord against the tenant by reason of such default said amount shall be due and payable upon the commencement of any proceedings.”
The agreement of lease consists of a photocopy of a three-page (six-sided) standard form of lease, the origin of which is not known, and the petitioner’s one-page rider thereto. All four pages of the lease are of legal size. The standard-form portion of the lease contains 28 numbered paragraphs. There is a large space for "additional articles not provided in standard form of lease of apartment, but forming a part hereof’, in which space there are two unnumbered clauses. There is also a set of 14 additional clauses, numbered 1 through 14, entitled "Rules and Regulations Attached to and Made a Part of This Lease in Accordance with Article 10”. The one-page rider consists of eight clauses numbered 29 through 36, which is to say, consecutively with the 28 clauses of the standard lease. Clause 32 is one of the clauses added by the petitioner to the standard lease.
*330 The total number of clauses (inclusive of the standard lease, the rules and regulations, the two unnumbered additional clauses, and the eight clauses of the rider) is 52. There is, in addition to all of the above, a long paragraph entitled "Guaranty”. This paragraph, which refers to the undertaking of a third party, is not signed, and apparently does not form a part of the agreement between the petitioner and the respondents. According to the respondents, the entire agreement of lease contains 8,358 words.
I.
The court finds that there was an agreement of lease between the parties. The alternative contention of the respondents that an indigent person is not bound to his contracts is rejected. Whatever the income of the respondents, and regardless that the Department of Social Services of Rockland County and the Legal Aid Society of Rockland County, Inc., choose to assist the respondents financially or otherwise, the respondents are bound to observe their obligations. It is as repugnant to the law that the poor evade their legal obligations, as it is if the wealthy use their material accumulations for the same purpose. A standard of true administration of justice is equal justice under law. One may neither respect the person of the poor nor favor the person of the mighty. (Leviticus 19:15.)
The respondents’ reliance on section 1 of article XVII of the Constitution of the State of New York is misplaced. This provision reads in its pertinent part: "The aid, care and support of the needy are public concerns”.
The purpose of article XVII is to set forth in constitutional terms social policies of the State which, properly, could have been and ought to have been set forth by statute. Nothing in section 1 of article XVII permits the State or any subdivision thereof to allow any person to disregard for reason of poverty his contractual obligation. Any such reading of section 1 of article XVII would be an impairment by the State of the obligation of contracts, contrary to the Constitution of the United States (U.S. Const., art I, § 10; art VI). Indeed, the respondents’ reading of section 1 of article XVII would nullify as well the petitioner’s constitutional right to the equal protection of the laws of the State (N. Y. Const., art I, § 11).
Therefore, the court holds that the respondents, whatever *331 their economic means, social standing, background and prospects, are obligated to the terms of their agreement of lease.
II.
The question, then, is the validity of clause 32. The respondents argue and the petitioner opposes the contention that the agreement of lease is a contract of adhesion.
It should be made clear that if the court had found that there is no agreement of lease between the parties, for failure of a meeting of the minds or for any other reason, then there is no occasion to consider the doctrine of contract of adhesion. Clearly, the prerequisite to a finding that a contract is a contract of adhesion is the existence of a contract.
A contract of adhesion is a contract in relation to a necessity of life, drafted by or for the benefit of a party for that party’s excessive benefit, which party uses its economic or other advantage to offer the contract in its entirety solely for acceptance or rejection by the offeree. Thus, the elements of a contract of adhesion are: (1) a necessity of life; (2) a contract for the excessive benefit of the offeror; (3) an economic or other advantage of the offeror; and (4) the offer of the proposed contract on a take it or leave it basis.
All four elements must be present for a contract to be deemed a contract of adhesion. That a contract benefits a party does not render the contract void, even if the terms are harsh. (First Nat. Stores v Yellowstone Shopping Center, 21 NY2d 630, 637-638.) Also, the law attaches no onus to any party which takes full advantage of the strengths of his bargaining position. Further, at common law, the offeror is master of his offer, and may decide his own terms and conditions. Whether the terms are harsh, "unfair”, disliked by the offeree, or disparaged by acquaintances to whom the offeree turns for comforting words of agreement with his opinion of the offeror, the offeror is supreme. The alternatives of the offeree are to make a counteroffer and to reject the offer.
The element which is the sine qua non of a contract of adhesion is that the contract’s subject matter is a necessity of life. In comparison with the respondents, Joanne Ciofalo was offered: (1) a membership contract of the defendant gymnasium; which contained (2) a covenant not to sue, to the excessive benefit of the offeror; based upon (3) the defendant gymnasium’s advantage of ownership of a facility, access to *332 which the defendant had exclusive control. In context of this convenience or luxury of life, the Court of Appeals held: "Here there is no special legal relationship and no overriding public interest which demand that this contract provision, voluntarily entered into by competent parties, should be rendered ineffectual. Defendant, a private corporation, was under no obligation or legal duty to accept plaintiff as a 'member’ or patron. Having consented to do so, it had the right to insist upon such terms as it deemed appropriate. Plaintiff, on the other hand, was not required to assent to unacceptable terms, or to give up a valuable legal right, as a condition precedent to obtaining employment or being able to make use of the services rendered by a public carrier or utility.” (Ciofalo v Vic Tanney Gyms, Inc., 10 NY2d 294, 297-298 [all concur].)
If Mrs. Ciofalo were dissatisfied with the terms of the offeror’s contract, and could not persuade the offeror to change the offer or to accept a counteroffer, then her sole recourse was to reject the proposed contract. (Levine v Shell Oil Co., 28 NY2d 205, 213.)
In the case at bar, the subject matter of the agreement of lease is shelter. The court takes judicial notice that food, clothing, shelter, and employment are necessities of life. The respondents must seek and obtain housing for themselves and for their infant daughter. The respondents do not have the alternative of foregoing shelter, nor is any natural shelter, such as a cave, available to them.
Given the overwhelming need for housing, the respondents must do exactly as the petitioner demands, or shelter will be denied. Had petitioner demanded that the respondents fall to their knees and grovel before him, the respondents perforce would have swallowed their pride and done so, or be condemned to remain outside, never to come in from the cold. Here, the petitioner demanded that the respondents grovel not physically, but legally. The petitioner’s unbargainable price is that the respondents agree to clause after clause of terms to the excessive benefit of the petitioner. The parties were not in pari passu, and there was no bargaining as to any term of the lease, other, perhaps, than the duration of the lease, which is typed in the preamble. The amount of rent; the agreement, contrary to common law, that the rent be due in advance of use, and monthly; and the details of the security clause (clause 4) were not open to bargaining. In addition, and not less important, the petitioner’s offer — which the respondents can *333 not refuse — demands that the respondents sign away valuable legal rights, such as: (a) the right to trial by jury (clause 26); (b) the protection offered by section 227 of the Real Property Law (clause 20); and (c) the benefit of section 223-a of the Real Property Law (clause 3). Certainly these constitutional and legal rights involve an overriding public interest, worthy of protection against involuntary waiver. Who is to say that the need for shelter is less important than employment, service by public carrier, or utility services, none of which may be the subject of unacceptable terms, and none of which may be offered in return for a valuable legal right?
Though the petitioner utilized a standard form agreement of lease, the fact that a standard form of contract is used does not determine that the contract is a contract of adhesion. The criterion is economic or other advantage, of which a standard form contract is a result, not an origin. It is the economic power of a seller’s market which creates the possibility for use of a standard form contract with its inherent one-sidedness. Under different conditions, such as a housing surplus, a landlord could offer a standard form of lease, but it would not be a contract of adhesion because acceptance of the contract is not forced upon the offeree by the offeror’s economic or other advantage. To illustrate the point: clause 32 in the case at bar is not a clause of the standard form of lease, but is one of the clauses of the petitioner’s rider. Nonetheless, the clause itself, considered as a contract, is a contract of adhesion because it meets the definition set forth supra. It does not matter that the petitioner, rather than a group of persons similarly situated, wrote the clause.
The court rejects the analogy of a landlord to a Uniform Commercial Code merchant. The essence of the Uniform Commercial Code term (which is a law merchant concept, and which is limited strictly, both historically and statutorily, to transactions in goods) is the concept of "a professional in business. The professional status under the definition may be based upon specialized knowledge as to the goods, specialized knowledge as to business practices, or specialized knowledge as to both”. (McKinney’s Cons. Laws of N. Y., Book 62 Vz, Part 1, Uniform Commercial Code, § 210, official comment, p 92.) The essence of the contract law concept of "contract of adhesion” is offer and acceptance under the four conditions enumerated above. The personal or specialized knowledge of the landlord is immaterial. In most cases, a prospective tenant *334 deals with the landlord’s agent, or even his servant. The prospective tenant does not rely on the business acumen of the landlord, and knows nothing of it, except as revealed indirectly by the landlord’s offer of a contract of adhesion.
Therefore, the court finds as a matter of contract law that the agreement of lease between the petitioner and respondents is a contract of adhesion.
III.
Clause 32 provides for attorney’s fees in the event of a default by the respondents, but assumes the very thing which is the subject of the action or special proceeding. If the petitioner decides that the respondents defaulted, and if the petitioner commences a civil action "by reason of such default[,] said amount [of $100] shall be due and payable upon the commencement of any proceedings [sic] ” (Clause 32, emphasis added.) It is the commencement of the proceeding which renders the attorney’s fees payable to the petitioner. According to the terms of clause 32, there could be a judicial determination that there had been no default, and the attorney’s fees would be nonetheless due. This is unconscionable. The effect of such clause is to permit the petitioner to exact tribute from the respondents for the petitioner’s legal proceedings, successful or not. This is unconscionable. As if to press his advantage, the petitioner would have the penalty of $100 due "forthwith”, without any institution of a civil action to determine the alleged fact of default. This is unconscionable. Further, in an agreement of lease as complicated and as one-sided as this, there is a multitude of covenants, essential and of lesser importance, any one of which the petitioner can designate as a default "with respect to any of the covenants of this lease”. The effect of clause 32 is to empower the petitioner, through the potential of this clause, to chill the respondents’ assertion of their rights. This is unconscionable.
The Uniform Commercial Code provision concerning an unconscionable clause or contract (Uniform Commercial Code, § 2-302) is inapplicable. Article 2 of the Uniform Commercial Code applies by its terms only to goods (Uniform Commercial Code, § 2-102); the term "goods” is defined elaborately (Uniform Commercial Code, § 2-105). It is not necessary to look to the Uniform Commercial Code as a basis for the concept of unconscionability, since the concept originated in equity, not in the law merchant. (McKinney’s Cons. Laws of N. Y., Book *335 62 Vi, Part 1, Uniform Commercial Code, § 2-302, N. Y. Annotations, p 195.)
A court of equity has undoubted jurisdiction to relieve against every species of fraud. (Earl of Chesterfield v Janssen [1750] 2 Ves. Sen. 125, 152, 155; 28 Eng. Rep. 82, 98, 100 [Lord Hardwicke, Lord Chancellor].) A court of law will not award contractual damages which are absurdly disproportionate to the actual damages, but true compensation may be allowed. (James v Morgan [1663], 1 Lev. Ill; 83 Eng Rep 323 [K.B.].) In New York, there is but one form of civil action; the distinctions in form between actions at law and suits in equity were abolished (CPLR 103, subd [a]; Practice Commentaries by Joseph M. McLaughlin, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 103, C103:l, pp 14-15). Law and equity themselves remain unmerged, especially in light of the constitutional guarantee of trial by jury (N. Y. Const., art I, § 2; art I, § 8; art III, § 17; art VI, § 18), though not quite as independent as in the centuries of their youths. Nonetheless, law and equity are combined in each court which has equity jurisdiction (there is no court in New York which has equity jurisdiction exclusively), and each court may, within the limits of its jurisdiction, grant such relief at law and in equity to which a party is entitled, as proven, whether or not relief is demanded. (CPLR 3017, subd [a]; Greer v Tweed, 13 Abb. Prac. [N.S.] 427, 429; McGinnis v Bankers Life Co., 39 AD2d 393, 399 [all concur].) Accordingly, the Court finds that clause 32, which exacts the petitioner’s attorney’s fees from the respondents: (a) forthwith upon a unilaterally-asserted breach of a covenant; (b) merely upon the commencement of a civil action; (c) without regard to the outcome of the action or special proceeding; or (d) for breach of any covenant, without distinction between essential covenants and secondary ones, is both disproportionate at law and unconscionable in equity.
The petitioner’s assertion that section 234 of the Real Property Law is of compensating relief to the tenant is without merit. The statutory right of the respondents, like the supposed contractual right of the petitioner, begs the question of whether the attorney’s fees demanded are unconscionable. If attorney’s fees payable by the respondent are unconscionable for any one of the reasons suggested above, then the same reason or reasons make attorney’s fees payable by the petitioner unconscionable. The Legislature in its wisdom could not have intended that the court countenance unconscionabil *336 ity by either party. Section 234 of the Real Property Law recognizes this implicitly, since it allows recovery by the tenant of "reasonable attorneys’ fees and/or expenses”. (Emphasis added.) The statute does not contemplate that a landlord and a tenant are to be put on equal footing in that each is allowed to exact unconscionable attorney’s fees one from the other. Section 234 of the Real Property Law specifies that the tenant’s attorney’s fees are to be reasonable. Law commands and equity requires that the landlord’s attorney’s fees, likewise, be reasonable and not unconscionable.
Further, it is the inherent power both of a court of law and of a court of equity to prevent utilization of the institutions of justice for the perpetration of injustice. The courts are not to be used, under color of contract law, for overreaching, for imposition of obligation of contract by fraud or duress, or for any purpose which seats injustice in the hall of justice. Clause 32 could be utilized to aid a landlord intent on the subjugation of the tenant, in that a landlord could threaten legal action and the costs of a legal action against a tenant who steps out of line. No court is obligated to countenance, much less uphold, the use or implied use of legal institutions in a manner which bring reproach to the administration of justice. (Greer v Tweed, supra, p 429.)
IV.
The court finds that the attorney’s fees of $100 under clause 32 are in the nature of a penalty. As discussed above, clause 32 makes the $100 due upon the commencement of the proceeding. There is no relationship between the amount allegedly due and the outcome of the civil action. Similarly, there is no relationship between the amount allegedly due and the attorney’s services performed. A petitioner’s attorney could draw the one paper required to commence a civil action (see CPLR 304), and be eligible for a fee. Any such attorney’s fees are without a rational basis, contrary to attorneys’ professional obligations under DR 2-106 of the Code of Professional Responsibility.
This is not to say that contractual agreements for reimbursement of attorney’s fees in agreement of lease are against the public policy of the State. The contrary is true (379 Madison Ave. v Stuyvesant Co., 242 App Div 567, affd 268 NY 576), provided that the attorney’s fees are sought in connec *337 tion with the original action, and there is no splitting of a cause of action (Columbia Corrugated Container Corp. v Skyway Container Corp., 37 AD2d 845, 846, affd 32 NY2d 818 [all concur]). However, contractual attorney’s fees may not be in the nature of a penalty. Even in 379 Madison Ave. (242 App Div 567, 569, supra), an action between two commercial entities, it was held that a provision for attorney’s fees must be "reasonable and not in the nature of a penalty or forfeiture”. Contractual attorney’s fees "may be recovered from the tenant only to the extent that they have been paid by the landlord, and then only to the extent that they are reasonable in amount.” (Id., emphasis added.)
v.
The court notes that if attorney’s fees were assessed against a party to an action, the party liable for such fees is entitled to a hearing on the issue of reasonableness. In landlord tenant cases, a tenant may fail to appear, pay the amount of rent demanded plus the petitioner’s costs and disbursements, and protect himself against eviction. The tenant also protects himself thereby against assessment of attorney’s fees, since in the absence of the tenanit, attorney’s fees are not determinable.
It is anomalous that a tenant, such as the respondent Frank Tomaselli herein, is subject to "additional rent” because he appeared, but would not have been subject to the penalty had he not appeared. Citizens of the State are not encouraged to obey the summonses of courts when obedience is penalized and default is rewarded. This, too, is a reproach to the administration of justice. (Greer v Tweed, 13 Abb. Prac. [N.S.] 427, supra.)
VI.
By its terms, clause 32 of the agreement of lease supersedes clause 19, which also provides for attorney’s fees. Clause 19 does not specify an amount, as does clause 32, but provides instead for "attorneys’ [sic] fees in instituting, prosecuting or defending any action or proceeding * * * as additional rent”. The substitution of clauses indicates that the petitioner demands of the respondents neither more than nor less than $100 for attorney’s fees. Thus, the court is bound to consider the specified attorney’s fees as a unit, rather than to measure *338 the amount due, if any, by the test of reasonableness or on a quantum meruit basis.
Accordingly: (a) on the ground that the agreement of lease is a contract of adhesion; alternatively, (b) on the ground that the attorney’s fees are disproportionate at law; alternatively, (c) on the ground that the attorney’s fees are unconscionable in equity; and alternatively, (d) on the ground that the specified attorney’s fees are in the nature of a penalty; the petitioner is denied any amount whatever for attorney’s fees.