SCHULKE RADIO PRODUCTIONS, LTD., APPELLEE, v. MIDWESTERN BROADCASTING COMPANY, APPELLANT.

[Cite as Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co. (1983), 6 Ohio St. 3d 436.]

(No. 82-916—Decided September 7, 1983.)

438

■

*Messrs. Cooper, Straub, Walinski & Cramer* and *Mr. H. Buswell Roberts, Jr.,* for appellee.

*Messrs. Spengler, Nathanson, Heyman, McCarthy & Durfee, Mr. James R. Jeffery* and *Mr. Byron S. Choka,* for appellant.

J. P. CELEBREZZE, J. The initial issue in this case is whether the court of appeals was correct in applying New York law, rather than Ohio law, in assessing the damages in this case.

Generally, Ohio follows the rule that where a conflict of law issue arises in a case involving a contract, the law of the state where the contract is to be performed governs. *Montana Coal & Coke Co.* v. *Cincinnati Coal & Coke Co.* (1904), 69 Ohio St. 351, paragraph one of the syllabus; *Pittsburgh, Cin., C. & St. L. Ry. Co.* v. *Sheppard* (1897), 56 Ohio St. 68, paragraph two of the syllabus. Some courts have noted that the rationale for this rule is that the place of performance bears the most significant relationship to the contract. *S&S Chopper Service* v. *Scripter* (1977), 59 Ohio App. 2d 311 [13 O.O.3d 326]; *Osborn* v. *Osborn* (1966), 10 Ohio Misc. 171 [39 O.O.2d 275].

In the instant matter, however, we are confronted with a question which we have not heretofore addressed, *i.e.,* where the parties have specifically designated a forum other than the place of performance, should that decision be respected? The court below held, and we agree, that under these circumstances the correct rule to apply is the one set forth in the Restatement of Law 2d (1971) 561, Conflict of Laws, Section 187, which provides in part, as follows:

"(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

"(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

"(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."

The trial court did not disagree with the applicability of this rule but held that the forum chosen by the parties had no relationship whatsoever to the parties or their contract. We do not agree with this finding. The record below indicates that at the time the 1975 contract was entered into, Stereo was located in the state of New York. It apparently moved its operations to New Jersey in 1976. In addition, the contract was executed by Schulke on behalf of Stereo in New York. Finally, until Stereo moved to New Jersey, part of its performance of the contract, including the preparation of the duplicate tapes, took place in New York. Under these circumstances, it is our conclusion that New York did bear a substantial relationship to the parties and the contract. Accordingly, there being no issue that the application of New York law would be contrary to the policies of this state, the court of appeals did not err in respecting the agreement of the parties.

The only remaining issue is whether the court of appeals properly assessed the appellee's damages under New York law. Money damages awarded in a breach of contract action are designed to place the aggrieved party in the same position it would have been in had the contract not been violated. *West, Weir & Bartel, Inc.* v. *Mary Carter Paint Co.* (1966), 25 A.D. 2d 81, 87, 267 N.Y. Supp. 2d 29, 35. The nonbreaching party must establish the fact of damage and then sustain its burden of proof as to the amount of damage by proof on any reasonable basis. *Id.* at 86. The proper measure of damages is the difference between the price the nonbreaching party would have received under the contract less the necessary expense of performance on its part. *R & I Electronics, Inc.* v. *Neuman* (1978), 66 A.D. 2d 836, 838, 411 N.Y. Supp. 2d 401, 404. Under this rule, the breaching party is entitled to a credit for the amount saved by the aggrieved party in not having to perform under the contract. However, this amount does not necessarily include overhead, or fixed expenses. The wrongdoer is entitled to a credit for only those business costs as were reasonably saved by its breach. *Id.* at 838.

In applying these rules, the court of appeals approved of a case having facts strikingly similar to those presented herein. *Schubert* v. *Midwest Broadcasting Co.* (1957), 1 Wis. 2d 497, 85 N.W. 2d 449, was an action to recover damages for the defendant's breach of a contract to telecast a television quiz program produced by the plaintiff's assignor. The defendant, which operated a television station, had contracted to televise the show for two years but suspended its operations prior to the expiration of that period. At the time of the breach, the defendant owed $4,040 under the contract.

The show's producer testified that he had an investment of approximately $400,000 in films and materials. At the time his contract with the defendant was signed, approximately fifty stations subscribed to his television quiz

shows. The bulk of his expenses was spread over these fifty clients. In addition, the plaintiff employed a company to transmit the films and materials to the different stations at a cost of three dollars per week per station. Applying the same rules set forth above, the court held that the plaintiff's overhead was fixed and that the three dollar per week figure was the only amount actually saved by him owing to the defendant's breach. Accordingly, the defendant's deduction was limited to that amount. *Id.* at 505.

In the case at hand, the appellee's major investment was in the production of its master tapes. As of 1975, duplicate tapes were being sent to approximately seventy different stations. The tapes were not customized to the various subscribers and the appellee's costs in producing the tapes and maintaining its basic operations were fixed. The only savings actually experienced due to Midwestern's breach was the one hundred dollars per month attributable to the direct cost of service to WXEZ.

Applying New York law to these facts, we find that the court of appeals correctly measured appellee's damages, granting the contract price minus a credit for only those sums actually saved by appellee, plus interest. Appellant is not entitled to any further reduction for a proportional share of appellee's fixed expenses.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.

W. BROWN, J., concurs separately.

WILLIAM B. BROWN, J., concurring. I agree with the majority that the judgment of the court of appeals awarding plaintiff-appellee $25,792 in damages must be affirmed. However, because I see no conflict between New York and Ohio law in this case, I find it unnecessary to adopt a conflict of laws rule.[1]

---

[1] It is unfortunate that the majority adopts the rule of Restatement of Law 2d (1971) 561, Conflict of Laws, Section 187, without any discussion of the rationale or policy behind such adoption. The majority opinion also ignores some very fundamental and potentially troublesome issues in the application of the test. For example, neither the Restatement nor this majority opinion discusses when the chosen state must have a substantial relationship to the parties or the transaction. This issue is particularly important in situations such as the present case where one party has moved and neither party retains any contact with the chosen state. This question and many others left unaddressed by the majority need to be considered before the Restatement test can truly become viable.

Furthermore, this court is well advised not to adopt the Restatement rule hastily inasmuch as it has received significant criticism. See Note, Effectiveness of Choice-of-Law Clauses in Contract Conflicts of Law: Party Autonomy or Objective Determination? (1982), 82 Colum. L. Rev. 1659.

Both Ohio and New York have adopted the general rule that a plaintiff is entitled to recover damages for a defendant's breach of contract in the amount of the further compensation plaintiff would have received under the contract, less the value to plaintiff being relieved of the obligation of completing performance. *Allen, Heaton & McDonald, Inc.* v. *Castle Farm Amusement Co.* (1949), 151 Ohio St. 522 [39 O.O. 330]; *R & I Electronics, Inc.* v. *Neuman* (1978), 66 A.D. 2d 836, 411 N.Y. Supp. 2d 401. Additionally, both states require plaintiff to allege and prove what he would have received under the contract and what the continuing performance would have cost. *Id.* Neither state's law specifically deals with the issue of allocation of overhead expenses.[2] Thus, since the law of both jurisdictions is identical on the question, there is no conflict of laws.[3] Where no conflict exists courts should naturally apply forum law and the fact that the parties have chosen the law of a particular state to govern their contract is irrelevant.[4]

Therefore, the sole issue before this court is whether the court of appeals properly awarded damages to appellee. Appellant contends that appellee presented no proof as to costs saved in regard to making master tapes, devising programming schedules, consulting, advising and servicing its customers. Appellant argues that these were services for which Midwestern had contracted and that these costs, including Schulke's business trips to Europe, must be allocated among appellee's customers as costs saved. Lastly, appellant believes that these constitute essential costs of the contract and have nothing to do with overhead.

This argument is unpersuasive. Webster's New Collegiate Dictionary (1975 Ed.) defines "overhead" as "business expenses * * * not chargeable to a particular part of the work or product." That is precisely what the costs involved in this case are. The contract provided that appellee would furnish appellant with music cue sheets and schedules for recommended tape rotations in addition to the tapes themselves. There is no mention of advice, consultation or additional servicing. As for Schulke's trips to Europe, appellee was already under contract to the BBC for the production of music selections.

---

[2] The lack of case law on this question is implicitly recognized by the majority. While stating that New York law governs the case, the majority relies on a Wisconsin case to resolve the question.

[3] Appellant asserts that Ohio law places a stricter burden of proof upon a plaintiff in order to recover compensatory damages than does New York law. I do not read the pertinent cases to establish such a difference.

[4] In this situation the expectations of the parties are not defeated because their contract is governed by the very rules which they desired. Moreover, there is no need for the courts of the forum state to undergo the perils of applying the law of another state beyond the initial inquiry as to whether the rules are identical. In the present case, this application is even less significant because the law of neither state addresses the determinative issue. Interestingly enough, there is authority in New York for just such an application. *Levey* v. *Saphier* (1975), 83 Misc. 2d 146, 149, 370 N.Y.Supp. 2d 808, 813 (where the court concluded that New York law applies even though it admitted that the application of Delaware law would have made no difference).

Even after the breach, appellee entered into a new contract with the BBC. Midwestern's breach presented no opportunity to affect the BBC contracts or reduce Schulke's travel expenses. In fact, as the majority opinion has clearly noted, appellee had to continue to produce master tapes for its remaining sixty-nine customers. This cost and similar costs for the production of the master tapes are clearly not chargeable to a particular part of the product and are thus overhead expenses. *Schubert* v. *Midwest Broadcasting Co.* (1957), 1 Wis. 2d 497, 85 N.W. 2d 449, is precisely on point in this regard and is properly approved and followed.

Furthermore, I agree with the majority that appellee appropriately satisfied its burden of proof in regard to savings actually experienced. *Allen, Heaton & McDonald, Inc., supra.* That standard does not require an absolute mathematical precision in the proof of damages or expenses saved. Indeed, such a requirement would be manifestly unjust, for it would allow the wrongdoer to profit from his breach and would supply an incentive for the breaching party to obfuscate the facts regarding the issue.

For the foregoing reasons I concur in the judgment that the decision of the court of appeals be affirmed.