SEKERES, APPELLANT, *v.* ARBAUGH ET AL., APPELLEES.

[Cite as Sekeres *v.* Arbaugh (1987), 31 Ohio St. 3d 24.]

(No. 86-1098—Decided June 3, 1987.)

*Douglas H. Glenn & Associates, Steven L. Mills* and *Douglas H. Glenn,* for appellant.

*Roetzel & Andress* and *Thomas M. Parker,* for appellees.

*Per Curiam.* The threshold question presented by this case is whether New York or Ohio law should govern the agreement of the parties. Once this issue is resolved, the question becomes whether the attorney fees provision violates the law of the applicable state. The courts below did not address the conflict of laws issue, but concluded that the provision was valid under Ohio law. We hold that the law of New York applies, and that it permits the use of a contractual attorney fees provision such as the one in question here.

I

In *Schulke Radio Productions, Ltd.* v. *Midwestern Broadcasting Co.* (1983), 6 Ohio St. 3d 436, 6 OBR 480, 453 N.E. 2d 683, syllabus, we held as follows:

"The law of the state chosen by the parties to govern their contractual rights and duties will be applied unless either the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or application of the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice by the parties."

As here, the parties in *Schulke* had agreed that their contract would be governed by the law of another state. This court adopted the tests found in Section 187(2) of the Restatement of the Law 2d, Conflict of Laws (1971) 561, to decide which state's law would be followed. Thus, the law of New York will be applied in this case if the requirements outlined in *Schulke* are met.

The first requirement is that the chosen state must have a substantial relationship to the parties or the transaction, or that there be some reasonable basis for the parties' choice. New York has a substantial relationship to both the parties and the transaction here. It is undisputed that New York is Merrill, Lynch's state of incorporation. Furthermore, the transaction was given final approval by Merrill, Lynch in New York. Thus, a reasonable basis exists for the choice of the parties.

The second requirement is that the application of the law of the chosen state must not violate the fundamental policy of the state which (1) has a greater material interest in the determination of the issue, and (2) is the state whose law would be applied in the absence of a choice by the parties. In other words, the application of New York law here must not violate the public policy of Ohio, but only if Ohio has a materially greater interest than New York in this matter, and only if Ohio law would have governed the agreement if the parties had not specified otherwise.

Ohio law clearly would have applied here had the parties not specified New York law in the agreement. However, Ohio does not have a *materially greater* interest than New York in the outcome of the case. While it is true that the agreement was signed in Ohio and that Sekeres is an Ohio

resident, Ohio was neither the place of performance of the contract nor the place where it was given final approval. The commodity futures trading took place in markets from coast to coast, and the act which ultimately created the contract took place in New York when Merrill, Lynch approved it. Ohio obviously does not have a materially greater interest than New York in this matter.

Consequently, it is unnecessary under the tests outlined in *Schulke* to determine whether the application of New York law here would violate Ohio's public policy. As this court held in *Jarvis* v. *Ashland Oil, Inc.* (1985), 17 Ohio St. 3d 189, 17 OBR 427, 478 N.E. 2d 786, paragraph two of the syllabus, even if the law of the chosen state "is concededly repugnant to and in violation of the public policy of this state, the law of Ohio will only be applied when it can be shown that this state has a materially greater interest than the chosen state in the determination of a particular issue."

## II

Having determined that New York law governs the agreement, we now turn to the question of whether a contractual attorney fees provision such as the one at issue here is valid in New York. We conclude that it is.

New York law clearly allows the use of attorney fees provisions in contracts. See, *e.g.*, *Avco Financial Services Trust* v. *Bentley* (1982), 116 Misc. 2d 34, 455 N.Y. Supp. 2d 62; and *Weidman* v. *Tomaselli* (1975), 81 Misc. 2d 328, 365 N.Y. Supp. 2d 681, affirmed (1975), 84 Misc. 2d 782, 386 N.Y. Supp. 2d 276. The only requirement New York imposes upon such provisions is that they must be reasonable; that is, they must not be a penalty to the party against whom the attorney fees are assessed. See *Weidman, supra,* at 336-337, 365 N.Y. Supp. 2d at 691; and *379 Madison Ave., Inc.* v. *Stuyvesant Co.* (1934), 242 App. Div. 567, 569, 275 N.Y. Supp. 953, 956, affirmed (1935), 268 N.Y. 576, 198 N.E. 412.

In this case the attorney fees granted to Merrill, Lynch by the trial court were neither unreasonable nor a penalty to Sekeres. The fees bore a reasonable relationship to the costs incurred by Merrill, Lynch in defending the action. They were not an arbitrary fixed amount intended to penalize Sekeres for bringing the suit. Therefore, we hold that the attorney fees provision agreed to by the parties here is valid under New York law.

The trial court properly granted Merrill, Lynch's counterclaim for attorney fees under the terms of the agreement. Accordingly, we hereby affirm the judgment of the court of appeals, although for different reasons.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, LOCHER and DOUGLAS, JJ., concur.

RESNICK, WRIGHT and H. BROWN, JJ., dissent.

ALICE ROBIE RESNICK, J., of the Sixth Appellate District, sitting for HOLMES, J.

ALICE ROBIE RESNICK, J., dissenting. I respectfully dissent from the majority's finding that New York law applies.

The majority relies on *Schulke Radio Productions, Ltd.* v. *Midwestern Broadcasting Co.* (1983), 6 Ohio St. 3d 436, 6 OBR 480, 453 N.E. 2d 683, in determining that New York law should apply. The *Schulke* decision was based upon application of the test found in Section 187(2) of the Restatement of the Law 2d, Conflict of Laws (1971) 561, which states:

"The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

"(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

"(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."

The key issue upon which I disagree with the majority opinion is whether Ohio has a "materially greater interest" in the determination of the issues in this case than New York. The only contact New York, the chosen forum, had with the parties is twofold: (1) Merrill, Lynch is a New York corporation and (2) the contract was received in New York for execution. Ohio, on the other hand, had considerably more contact: (1) Sekeres was a citizen of Ohio, (2) Merrill, Lynch was doing business in Ohio, (3) Merrill, Lynch had an agent permanently located in Ohio, (4) any explanations and negotiations of the contract were conducted in Ohio, (5) appellant signed the contract in Ohio and was bound by that signature, and (6) Ohio has a substantial interest in protecting the rights and needs of its citizens. When the contacts with New York and Ohio are compared, it is evident that Ohio does in fact have a materially greater interest than New York in the resolution of this issue.

The contract was not to be performed in either Ohio or New York, but primarily in a third state. This prevents the performance of the contract from favoring either state.

Since it is apparent that Ohio has a materially greater interest than New York, it becomes necessary to determine whether application of the attorney fees provision "* * * would be contrary to a fundamental policy * * *" of Ohio. Ohio case law makes it abundantly clear that a provision requiring the payment of the opposing party's attorney fees violates the public policy of Ohio and is unenforceable. It is well-established in Ohio

that attorney fees are not to be awarded to the successful party unless provided for by statute or unless the party against whom the fees are taxed was found to have acted in bad faith. See *Ohio Edison Co.* v. *Franklin Paper Co.* (1985), 18 Ohio St. 3d 15, 18 OBR 13, 479 N.E. 2d 843; *State, ex rel. Crockett,* v. *Robinson* (1981), 67 Ohio St. 2d 363, 21 O.O. 3d 228, 423 N.E. 2d 1099; *State, ex rel. Fraternal Order of Police,* v. *Dayton* (1977), 49 Ohio St. 2d 219, 3 O.O. 3d 360, 361 N.E. 2d 428; *State, ex rel. Grosser,* v. *Boy* (1976), 46 Ohio St. 2d 184, 75 O.O. 2d 228, 347 N.E. 2d 539; *Sorin* v. *Bd. of Edn.* (1976), 46 Ohio St. 2d 177, 75 O.O. 2d 224, 347 N.E. 2d 527; *State, ex rel. Michaels,* v. *Morse* (1956), 165 Ohio St. 599, 60 O.O. 531, 138 N.E. 2d 660.

This court has previously considered Section 187(2)(b) and has determined:

"Where the law of the chosen state sought to be applied is concededly repugnant to and in violation of the public policy of this state, the law of Ohio will only be applied when it can be shown that this state has a materially greater interest than the chosen state in the determination of the particular issue. (Restatement of the Law 2d, Conflict of Laws [1971] 561, Section 187[2][b], construed.)" *Jarvis* v. *Ashland Oil, Inc.* (1985), 17 Ohio St. 3d 189, 17 OBR 427, 478 N.E. 2d 786, at paragraph two of the syllabus.

Paying an opponent's attorney fees absent a statutory provision or bad faith is repugnant to and does violate Ohio's public policy. Also, Ohio does have a materially greater interest than New York in the contract. Therefore, Ohio law should be applied and the attorney fees provision should be found unenforceable.

I would also note that the court of appeals essentially stated in its decision that it did not matter whether Ohio or New York law was applied because the contract provision was not repugnant to Ohio law. The court of appeals failed to provide any applicable case law for its position. I must disagree with the court of appeals' position because, as demonstrated in the foregoing, it is well-established that contractual attorney fees provisions are repugnant to Ohio public policy. I would, therefore, reverse the decision of the court of appeals.

WRIGHT and H. BROWN, JJ., concur in the foregoing dissenting opinion.

HERBERT R. BROWN, J., dissenting. I respectfully dissent because I believe that the majority should address (but does not) an issue that causes a substantial chill on the requirement of Section 16, Article I of the Ohio Constitution that the courts of Ohio be open to every person for the administration of justice without denial or delay.

In this case, Merrill, Lynch, Pierce, Fenner & Smith, Inc., a corporation of worldwide dimension, has provided in its pre-printed customer

agreement that if the customer makes a claim against the corporation, the customer shall pay "any cost incurred by Merrill, Lynch in successfully defending against any claims asserted by * * * [him] in each case *including without limitation, legal fees, interest and expenses.*" (Emphasis added.) On the other hand, if the customer successfully defends a claim brought by Merrill, Lynch, the customer must bear his own legal fees and expenses. The imbalance is obvious. If Merrill, Lynch can enforce such a provision in its pre-printed, form contract, why not insurance companies, banks, landlords, auto lessors, airline carriers, sporting event promoters (in language printed on the ticket of admission) and anyone else with whom the public does business? The party with the power to include such provisions in a pre-printed contract is afforded a magnificent tool to discourage, if not eliminate, litigation against itself. As the trend toward computerization, use of form contracts and mass marketing grows, the issues raised in this case increase in their import.

In the case *sub judice,* Merrill, Lynch defends its practice by suggesting that if the customer does not like it, the customer may negotiate with Merrill, Lynch's New York lawyers to have the contract modified. No evidence was offered that any customer has ever accomplished such a modification. It seems fanciful to believe that Merrill, Lynch would change this provision for a customer in Medina, Ohio.

## I

Section 16, Article I of the Constitution of the state of Ohio provides:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.

"Suits may be brought against the state, in such courts and in such manner, as may be provided by law."

In *Baltimore & Ohio RR. Co.* v. *Stankard* (1897), 56 Ohio St. 224, 232, 46 N.E. 577, 579, this court observed:

"*Courts are created by virtue of the constitution, and inhere in our body politic as a necessary part of our system* of government, and it is not competent for any one, by contract or otherwise, to deprive himself of their protection. The right to appeal to the courts for the redress of wrongs, is one of those rights which is in its nature under our constitution, [in]alienable, *and cannot be thrown off, or bargained away.*" (Emphasis added.)

The provision in the Merrill, Lynch contract may not lock the door to Ohio courts for its customers, but it puts a hefty barrier in front of the doorway.

## II

Perhaps because of the patent inequity, there have been few Ohio cases construing contractual provisions which make an award of attorney fees against the losing party in a suit between the contracting parties.

However, the rule in Ohio has been well-settled since 1841 that provisions similar to those Merrill, Lynch seeks to take advantage of are against public policy and void. In *State* v. *Taylor* (1841), 10 Ohio 378, the Ohio Supreme Court struck down a contractual provision to pay a five percent attorney collection fee in addition to legal interest for money loaned. See, also, *Shelton* v. *Gill* (1842), 11 Ohio 417; *Martin* v. *Trustees of Bank of St. Clairsville* (1844), 13 Ohio 250. In *Leavans* v. *Bank* (1893), 50 Ohio St. 591, 34 N.E. 1089, this court held that a stipulation in a mortgage which allowed an attorney fee in an action brought to foreclose it was against public policy and void.

More recently, in *Miller* v. *Kyle* (1911), 85 Ohio St. 186, 192, 97 N.E. 372, this court said:

"In this state it has been firmly established, and long and consistently maintained, that such contracts for the payment of counsel fees upon default in payment of a debt will not be enforced."

In *Midwest Properties Co.* v. *Renkel* (1930), 38 Ohio App. 503, 176 N.E. 665, the Court of Appeals for Cuyahoga County struck down a provision requiring a lessee to pay attorney fees incurred by the lessor in enforcing the lease. In *Federal Deposit Ins. Corp.* v. *Timbalier Towing Co., Inc.* (N.D. Ohio 1980), 497 F. Supp. 912, at 929, the long-standing Ohio public policy was recognized. That court said: "Ohio likewise prohibits the enforcement of express agreements for recovery of attorney's fees for breach of a simple contract." In *American Nursing Care of Toledo* v. *Leisure* (N.D. Ohio 1984), 609 F. Supp. 419, 433, the court stated: "It is well settled that in Ohio any stipulation to pay attorney's fees as part of the costs of an action or an obligation is contrary to public policy." See, also, *AMF Inc.* v. *Computer Automation* (S.D. Ohio 1983), 573 F. Supp. 924, 934; *Driggs* v. *Credit Alliance Corp.* (N.D. Ohio 1984), 591 F. Supp. 1221, 1228.

An exception to the policy against attorney fees provisions has been recognized in the case of contracts of indemnity. See *Allen* v. *Standard Oil Co.* (1982), 2 Ohio St. 3d 122, 125, 2 OBR 671, 674, 443 N.E. 2d 497, 500; *Motorists Mut. Ins. Co.* v. *Trainor* (1973), 33 Ohio St. 2d 41, 47, 62 O.O. 2d 402, 405, 294 N.E. 2d 874, 878. The reason for the exception is apparent. In a contract of indemnity the indemnitor agrees to make the indemnitee whole for losses incurred when the indemnitee is sued. This is not a situation of imbalance but one of making the indemnified party whole, and is easily distinguishable from provisions such as the one in the Merrill, Lynch contract.

The court of appeals below hinges its decision that the Merrill, Lynch contract is valid under Ohio law upon an assertion that "research of Ohio case law reveals only one case dealing with the validity of an attorney's fees provision in a contract as opposed to a note." The court cites *Burley Tobacco Growers' Co-op. Assn.* v. *Gardner* (1924), 25 Ohio N.P. (N.S.) 1, and makes that decision the touchstone of its opinion. Such reliance is mis-

placed. *Burley Tobacco Growers'* (a common pleas court decision) was reversed on appeal in *List* v. *Burley Tobacco Growers' Co-op. Assn.* (1924), 22 Ohio Law Rptr. 455. The appeals court at 469-470 held, consistent with the long-standing rulings in attorney fees provision cases by the Ohio Supreme Court, that:

"We are unable to see any distinction in principle between the case at bar and *Leavans* v. *Bank,* 50 O.S. 591. In the *Leavans* case the contract sued on was a mortgage contining [*sic*] a stipulation that in case an action should be brought to foreclose it a reasonable sum should be included in the decree as an attorney fee. *If this were against public policy because of its tendency to encourage litigation no reason is apparent to us why the contract in question is not open to the same charge.*" (Emphasis added.) The appellate decision was affirmed without discussion of the attorney fees issue by the Ohio Supreme Court in *List* v. *Burley Tobacco Growers' Co-op. Assn.* (1926), 114 Ohio St. 361, 151 N.E. 471.

When the Ohio Constitution and the Ohio cases are examined it becomes evident why Merrill, Lynch would not want its contract determined under the law of Ohio.

## III

The policy against a one-sided attorney fees provision is particularly persuasive with respect to contracts of adhesion such as we have here. Black's Law Dictionary (5 Ed. 1979) 38, defines a contract of adhesion as a "[s]tandardized contract form offered to consumers of goods and services on essentially 'take it or leave it' basis without affording consumer realistic opportunity to bargain and under such conditions that consumer cannot obtain desired product or services except by acquiescing in form contract. Distinctive feature of adhesion contract is that weaker party has no realistic choice as to its terms." See *Wheeler* v. *St. Joseph Hospital* (1976), 63 Cal. App. 3d 345, 356, 133 Cal. Rptr. 775, 783; *Standard Oil Co. of Calif.* v. *Perkins* (C.A. 9, 1965), 347 F. 2d 379, 383.[1]

The call to scrutinize contracts of adhesion skeptically has been issued by this court this term in *Glaspell* v. *Ohio Edison Co.* (1987), 29 Ohio St. 3d 44, 47, 29 OBR 393, 395-396, 505 N.E. 2d 264, 266:

"* * * Often one party to a contract, being in a position to impose terms upon the other with no realistic opportunity to bargain afforded, would include those standardized clauses in the contract as would unreasonably impose upon the nonbargaining party burdens which were wholly inequitable. With such contracts of adhesion in hand, the drafting party invariably asserted, 'the indemnity or the exculpation, so that the

---

[1] For the history of "adhesion" contracts, see Prausnitz, The Standardization of Commercial Contracts in English and Continental Law (1937); Patterson, The Delivery of a Life-Insurance Policy (1919), 33 Harv. L. Rev. 198; and Kessler, Contracts of Adhesion — Some Thoughts about Freedom of Contract (1943), 43 Colum. L. Rev. 629, 635, as to "back-door" judicial devices.

policies supporting the rule of "contra proferentem" [against the proffering party], * * * caused the courts to apply the rule.' Corbin on Contracts (1984 Supp., Part 2) 624, Section 1472(E). Thus, while clauses limiting the liability of the drafter are ordinarily to be strictly construed, we need not do so when such burden of indemnification was assented to in a context of free and understanding negotiation. See, *e.g.,* Williston on Contracts, *supra,* at 141, Section 1750."

Judge Francis E. Sweeney of the Cuyahoga County Court of Common Pleas has observed in *Smith* v. *Globe American Cas. Co.* (1973), 38 Ohio Misc. 82, 86, 67 O.O. 2d 307, 309, 313 N.E. 2d 21, 24:

"Further the public policy towards contracts has been changing in the past years. Today, when there is a disparity in bargaining power between parties to a contract the courts are scrutinizing the contract. These one-sided contracts are called adhesion contracts. They are usually standard printed forms prepared by one party and submitted to the other on a take it or leave it basis, wherein there is often no true equality of bargaining power."

Judge Daniel B. Quillin, in his succinct but persuasive dissent below, goes to the heart of the problem raised by the contract of adhesion in the case *sub judice*:

"*We have been directed to no case, nor has any been found, which approves such an odious clause.* Mindful of the constitutional command that all courts shall be open to every person, we should not sanction this clause.

"It would be a hardy soul indeed who would risk making a claim in view of this harsh and punitive provision. Perhaps this was its intent." (Emphasis added.)

## IV

The present case cannot, however, be resolved purely on the basis of Ohio law. Here Merrill, Lynch, in its pre-printed form, has stated that the contract shall be governed by the laws of New York. Apparently, New York law does permit the enforcement of attorney fees provisions such as that in the Merrill, Lynch contract. It is on this basis (rather than the rationale of the court of appeals below) that my brethren in the majority dispose of the case. The majority concludes that Ohio does not have a materially greater interest than New York in the outcome of this case and that, accordingly, the matter may be resolved on the choice-of-law provision in the contract.

I disagree. Where the suit is by an Ohio resident, where the contract in question partially closes the door to Ohio courts, where the contract was signed by the customer in Ohio, where the initial investment in the commodity futures trading account was paid by a customer in Ohio, where the customer's dealings with Merrill, Lynch were all with agents employed by Merrill, Lynch in Ohio, and where we are dealing with a contract of adhesion, it seems to me that Ohio's interest is not only materially greater than that of New York, but of overriding dominance.

In approaching the choice-of-law question, a threshold consideration is that choice-of-law provisions in adhesion contracts should be closely scrutinized and not applied if substantial injustice would result to the adherent.

The Restatement of the Law 2d, Conflict of Laws (1971) 562, Section 187, Comment *b*, states:

"*A factor which the forum may consider is whether the choice-of-law provision is contained in an 'adhesion' contract,* namely one that is drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms. Such contracts are usually prepared in printed form, and frequently at least some of their provisions are in extremely small print. Common examples are tickets of various kinds and insurance policies. Choice-of-law provisions contained in such contracts are usually respected. Nevertheless, *the forum will scrutinize such contracts with care and will refuse to apply any choice-of-law provision they may contain if to do so would result in substantial injustice to the adherent.*" (Emphasis added.)

The view has been expressed that in a contract of adhesion, the adherent should never be bound by the choice-of-law stipulation. See *Siegelman* v. *Cunard White Star, Ltd.* (C.A. 2, 1955), 221 F. 2d 189, 206 (dissenting opinion by Judge Frank). This is the position espoused in Ehrenzweig, Adhesion Contracts in the Conflict of Laws (1953), 53 Colum. L. Rev. 1072. That view is attractive to me. However, it is not necessary to go that far to resolve the case before us.

I agree with the majority that *Schulke Radio Productions, Ltd.* v. *Midwestern Broadcasting Co.* (1983), 6 Ohio St. 3d 436, 6 OBR 480, 453 N.E. 2d 683, is the benchmark by which the choice-of-law question must be resolved. However, I believe the majority has failed to come to terms with the requirement in *Schulke* that New York law will not apply if "* * * application of the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice by the parties."[2] *Id.* at syllabus.

In *Jarvis* v. *Ashland Oil, Inc.* (1985), 17 Ohio St. 3d 189, 17 OBR 427, 478 N.E. 2d 786, the second paragraph of the syllabus states:

---

[2] The appellees maintain that Section 187(1) of the Restatement allows the parties to a contract to choose the law by which the contract will be interpreted and that it is unnecessary to make a determination of "materially greater interest" under Section 187(2). The majority does not discuss Section 187(1) of the Restatement and goes directly to Section 187(2). I agree with the majority's approach. See Note, Effectiveness of Choice-of-Law Clauses in Contract Conflicts of Law: Party Autonomy or Objective Determination? (1982), 82 Colum. L. Rev. 1659, 1660. The Restatement itself answers this contention of the appellees:

"*The rule of this Subsection is a rule providing for incorporation by reference and is not a rule of choice of law.* The parties, generally speaking, have power to determine the terms of their contractual engagements." (Emphasis added.) Restatement of the Law 2d, Conflict of Laws (1971) 563, Section 187(1), Comment *c*.

"Where the law of the chosen state sought to be applied is concededly repugnant to and in violation of the public policy of this state, *the law of Ohio will only be applied when it can be shown that this state has a materially greater interest than the chosen state in the determination of the particular issue.* (Restatement of the Law 2d, Conflict of Laws [1971] 561, Section 187[2][b], construed.)" (Emphasis added.)

In applying *Schulke, supra,* and *Jarvis, supra,* to the case *sub judice,* Ohio has a materially greater interest than New York. Accordingly, I would reverse the court of appeals and enter judgment in favor of the plaintiff-appellant Sekeres on the attorney fees assessed against him.

RESNICK and WRIGHT, JJ., concur in the foregoing dissenting opinion.

