MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., APPELLEE, *v.* STARK ET AL., APPELLANTS.

(No. 57167—Decided August 14, 1989.)

*Joshua R. Cohen,* for appellee.
*Al Dahling,* for appellants.

*Per Curiam.* This is an accelerated appeal brought pursuant to App. R. 11.1 and Loc. R. 25 of the Court of Appeals for Cuyahoga County. Defendants-appellants, Richard C. Stark and Caryle Stark, appeal from the judgment of the court of common pleas which awarded plaintiff-appellee, Merrill Lynch, Pierce, Fenner & Smith, Inc., attorney fees in the amount of $12,492.

On November 18, 1985, the appellants entered into an agreement titled "Customer Agreement" with the appellee which provided for the opening of a securities account on behalf of the appellants for the trading of securities options. The agreement further provided that the appellants were responsible for any attorney fees associated with the collection of any debit balance or deficiency in the securities account.

On June 24, 1986, the appellants purchased one hundred OEX 240 Call Options in the amount of $26,837.57.

On June 25, 1986, the appellants purchased an additional fifty OEX 240 Call Options in the amount of $12,839.95. Although the appellee made repeated demands for the payment of the amount of $36,497.74, which resulted from the purchase of the OEX 240 Call Options, the appellants refused to tender payment.

On February 24, 1987, the appellee filed a cause of action in the Court of Common Pleas of Cuyahoga County which sought to recover $36,497.74 from the appellants. On April 4, 1987, the appellants filed an answer and counterclaim. The counterclaim was grounded in fraud and intentional infliction of emotional distress. Upon the completion of discovery, the trial court scheduled a bench trial for December 23, 1988 at which time the appellants agreed to a judgment for the appellee in the amount of $34,000 plus prejudgment interest. The appellants further agreed to a dismissal of their counterclaim and to a determination by the trial court of attorney fees to be awarded to appellee.

Upon oral hearing, the trial court awarded the appellee $12,492 in attorney fees. Thereafter, the appellants timely brought the instant appeal from the trial court's award of attorney fees to the appellee.

The appellants' initial assignment of error is that:

"The court erred in ruling plaintiff was entitled to attorney fees."

This assignment of error is not well-taken.

The "Customer Agreement" which was executed between the appellants and the appellee consisted of twenty paragraphs. Paragraph eight of the Customer Agreement provided that:

"Liability for Costs of Collection

"8. To the extent permitted by the laws of the State of New York, the reasonable costs and expenses of collection of the debit balance and any unpaid deficiency in the accounts of the undersigned with you, including but not limited to attorneys' fees incurred and payable or paid by you, shall be payable to you by the undersigned."

In addition, Paragraph seventeen of the "Customer Agreement" provided that:

"The Laws of the State of New York Govern

"17. This agreement and its enforcement shall be governed by the laws of the State of New York; shall cover individually and collectively all accounts which the undersigned may open or reopen with you; shall inure to the benefit of your successors, whether by merger, consolidation or otherwise, and assigns, and you may transfer the accounts of the undersigned to your successors and assigns; and this agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the undersigned."

The Supreme Court of Ohio, in *Sekeres* v. *Arbaugh* (1987), 31 Ohio St. 3d 24, 31 OBR 75, 508 N.E. 2d 941, delineated the rule to be applied where a question exists as to whether Ohio law or the law of another state should govern a contract. The Supreme Court of Ohio stated that:

"The threshold question presented by this case is whether New York or Ohio law should govern the agreement of the parties. Once this issue is resolved, the question becomes whether the attorney fees provision violates the law of the applicable state. The courts below did not address the conflict of laws issue, but concluded that the provision was valid under Ohio law. We hold that the law of New York applies, and that it permits the use of a contractual attorney fees provision such as the one in question here.

"* * *

"In *Schulke Radio Productions, Ltd.* v. *Midwestern Broadcasting Co.* (1983), 6 Ohio St. 3d 436, 6 OBR 480,

453 N.E. 2d 683, syllabus, we held as follows:

"'The law of the state chosen by the parties to govern their contractual rights and duties will be applied unless either the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or application of the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of choice by the parties.'

"As here, the parties in *Schulke* had agreed that their contract would be governed by the law of another state. This court adopted the tests found in Section 187(2) of the Restatement of the Law 2d, Conflict of Laws (1971) 561, to decide which state's law would be followed. Thus, the law of New York will be applied in this case if the requirements outlined in *Schulke* are met.

"The first requirement is that the chosen state must have a substantial relationship to the parties or the transaction, or that there be some reasonable basis for the parties' choice. New York has a substantial relationship to both the parties and the transaction here. It is undisputed that New York is Merrill Lynch's state of incorporation. Furthermore, the transaction was given final approval by Merrill Lynch in New York. Thus, a reasonable basis exists for the choice of the parties.

"The second requirement is that the application of the law of the chosen state must not violate the fundamental policy of the state which (1) has a greater material interest in the determination of the issue, and (2) is the state whose law would be applied in the absence of a choice by the parties. In other words, the application of New York law here must not violate the public policy of Ohio, but only if Ohio has materially greater interest than New York in this matter, and only if Ohio law would have governed the agreement if the parties had not specified otherwise." *Id.* at 25, 31 OBR at 75-76, 508 N.E. 2d at 942.

· Applying the two-prong test of *Sekeres* to the case *sub judice,* we cannot but find that New York law governed the agreement as executed between the appellants and the appellee: (1) the state of New York possessed a substantial relationship to the parties (the state of New York was the appellee's state of incorporation); and (2) the state of Ohio did not possess a greater interest than the state of New York.

The Supreme Court of Ohio, in *Sekeres,* further opined that New York law clearly provided for the use of attorney fee provisions within an agreement/contract:

"Having determined that New York law governs the agreement, we now turn to the question of whether a contractual attorney fees provision such as the one at issue here is valid in New York. We conclude that it is.

"New York law clearly allows the use of attorney fees provisions in contracts. See, *e.g., Avco Financial Services Trust* v. *Bentley* (1982), 116 Misc. 2d 34, 455 N.Y. Supp. 2d 62; and *Weidman* v. *Tomaselli* (1975), 81 Misc. 2d 328, 365 N.Y. Supp. 2d 681, affirmed (1975), 84 Misc. 2d 782, 386 N.Y. Supp. 2d 276. The only requirement New York imposes upon such provisions is that they must be reasonable; that is, they must not be a penalty to the party against whom the attorney fees are assessed. See *Weidman, supra,* at 336-337, 365 N.Y. Supp. 2d at 691; and *379 Madison Ave., Inc.* v. *Stuyvesant Co.* (1934), 242 App. Div. 567, 569, 275 N.Y. Supp. 953, 956, affirmed (1935), 268 N.Y. 576, 198 N.E. 412." *Id.* at 26, 31 OBR at 77, 508 N.E. 2d at 943.

Therefore, in light of the existence

of an agreement between the appellants and the appellee which required the application of the law of the state of New York, the meeting of the two-prong test of *Sekeres,* and the allowance of attorney fees provision in the consumer agreement, we find that the appellee was entitled to attorney fees.

Thus, appellants' first assignment of error is not well-taken.

The appellants' second assignment of error is that:

"The court erred in granting plaintiff $12,492.00 attorney fees as this was against the manifest weight of the evidence."

This assignment of error is well-taken.

The application of the law of the state of New York in dealing with the rights and duties of the appellants and the appellee as found in the consumer agreement required that the trial court apply the law of the state of New York in determining the award of attorney fees.

An award of attorney fees, in the state of New York, requires the examination of factors in addition to the amount of time expended by counsel in the prosecution or defense of a client:

"We reach a different conclusion with respect to the amount of the Surrogate's award. The fixation of counsel fees is to be determined on the basis of such factors as the time required; the complexity of the issues involved; the skill required to handle the problems presented; the lawyer's experience, ability and reputation; the amount involved and benefit resulting to the client from the services; the customary fee charged by members of the Bar for such services; the results obtained; and the responsibility involved *(Matter of Freeman,* 34 N.Y. 2d 1, 9 [355 N.Y.S. 2d 336, 311 N.E. 2d 480]. The Surrogate accepted petitioner's assertion in his petition that he spent an aggregate of some 125 hours performing legal services for Erlene and her estate and fixed the rate of compensation at $125 per hour. The actual proof at the trial of the time spent by petitioner on the various matters involving Erlene's interest in and claims against the estate of her late husband fell far short of that figure. Respondent was entitled to be fully apprised of the nature and extent of petitioner's services *(see, Matter of Martin,* 37 Misc. 2d 514, 515 [236 N.Y. Supp. 2d 353], *affd* 21 A.D. 2d 673 [249 N.Y. Supp. 2d 947]." *In re Estate of Gutchess* (1986), 117 App. Div. 2d 852, 854, 498 N.Y. Supp. 2d 297, 300.

In the case *sub judice,* we find that the trial court did not apply the aforesaid factors in its determination of attorney fees. Although evidence was presented at the oral hearing with regard to the time expended by appellee's counsel, the record fails to disclose inquiry or consideration of the complexity of the case, the skill required to handle the problems presented, and the lawyer's experience, ability, and reputation. Our review of the case herein raises serious questions pertinent to the complexity of a matter which essentially involved a collection. In addition, the record fails to disclose any testimony concerning the experience, ability, and reputation of appellee's counsel.

Therefore, we find that the trial court's award of attorney fees in the amount of $12,492 was against the manifest weight of the evidence as a result of the failure of the trial court to properly apply the factors for the award of attorney fees as mandated by the state of New York.

Thus, the judgment of the trial court in awarding attorney fees to the appellee in the amount of $12,492 is reversed and the matter is remanded to the trial court for a new hearing on the amount of attorney fees due the appellee in light of the applicable law of the state of New York.

The judgment is reversed and the cause is remanded.

*Judgment accordingly.*

MATIA, P.J., HOFSTETTER and FORD, JJ., concur.

EDWIN T. HOFSTETTER, J., retired, of the Eleventh Appellate District, and ROBERT B. FORD, J., retired, of the Geauga County Court of Common Pleas, sitting by assignment.