## MIDWEST PROPERTIES CO v RENKEL

Ohio Appeals, 8th Dist, Cuyahoga Co
Decided Dec. 1, 1930

Galvin & Babin, Cleveland, for Midwest Properties Co.

Fackler & Demson, Cleveland, for Renkel.

LEVINE, J.

The sole question presented to the court was: Does the clause of the lease providing for the payment by the lessee of attorneys' fees incurred and paid by the lessor in enforcing the covenants of a lease to pay rent, create an enforceable obligation on the lessee to pay the lessor the reasonable attorney's fees paid by such lessor?

The trial court ruled that such a provision is a valid provision which can be properly enforced and accordingly allowed $100 as attorneys' fees which were incurred by the lessor in enforcing the covenants and agreements of the lease. Error proceedings are prosecuted from said decision of the Common Pleas Court.

The exact wording of the provision in the lease, and which was the basis of the allowance of $100 as attorneys' fees, in addition to interest on the installment of rent due and unpaid, is as follows:

" (j) In case the lessor, without fault on his part, be made a party to any litigation commenced by or against the lessee then the lessee shall and will pay all costs, reasonable attorneys' fees and expenses incurred by or imposed on the lessor by or in connection with such litigation. The lessee will also pay all costs, reasonable attorneys' fees and expenses which may be incurred or paid by the lessor in enforcing the covenants and agreements of this lease and all such costs and attorneys' fees, if paid by the lessor, upon the failure of the lessee so to do, shall be so much additional rent due on the next rent day after such payment or payments, together with interest at eight (8) per cent. per annum, from the date of payment, and shall be collected as any other rent specifically reserved herein "

For the purpose of this review, we may take it as conceded that the amount al-

lowéd as attorneys' fees was reasonable. It is the contention of plaintiff in error that the said provision for the payment of attorneys' fees in addition to payment of interest on installments of rent which remain unpaid, is invalid in law for the following reasons:

1. Because such a payment in addition to interest at the rate of eight (8) per cent. is regarded as usurious and void under the Ohio statute, and the decisions.

2. Such payment is in the nature of a penalty levied against the lessee because of his failure to pay the rental obligation on the day when it becomes due and is therefore unenforceable.

3. That such provision is against public policy in that it encourages litigation.

In support of the first contention that the provision is in the nature of an evasion of the usury statute, we are referred first to §8306 GC as follows:

"The parties to a bond, principal, promissory note, or other instrument in writing, for the forbearance or payment of money at any future time, may stipulate therein for the payment of interest upon the amount thereof at any rate not exceeding eight per cent. (8%) per annum, payable annually."

It is urged that a lease containing a covenant by the lessee to pay rent at a future time. and stipulating therein for the payment of interest, is an instrument of writing which comes within the contemplation of the statute.

Various reported cases decided by the Ohio Supreme Court are cited, which indicate that the courts jealousy guarded the protection sought to be afforded to debtors by the General Code. The attempts of creditors at various times and by various means to circumvent the usury statute have almost invariably been defeated by the courts.

In the case of **State of Ohio for the Use of Commissioners** v **Taylor**, 10 Oh St, 376, the defendant borrowed surplus revenue of the United States deposited with the state of Ohio, and signed a note agreeing to pay interest at the rate of seven per cent per annum, which, at that time, was the highest rate of interest countenanced by law, and in addition thereto, agreed to pay attorneys' fees not to exceed five (5) per cent. of the principal sum for the collection of said note. In the opinion the court said:

"If this agreement can be enforced, the statutes of Ohio regulating the rate of interest, whether upon loans by the fund commissioners, or in other cases, are at once virtually repealed * * *."

"It seems to us to be of little consequence, in this case, what this 5% may be called, but the inquiry is, what is the thing itself? However, it may be disguised, it is very clear to us it is a mere shift or device by which 12% is retained, as interest, upon this loan, and in this view of the case cannot be enforced."

In **Miller** v **Kyle**, 85 Oh St, 186, the court said:

"In this state it has been firmly established and long and consistently maintained, that such contracts for the payment of counsel fees upon default in payment of a debt will not be enforced."

Counsel for defendant in error, while recognizing the force of the cases above cited, contends that the rule laid down in **Miller** v **Kyle**, **supra**, is limited to cases of promissory notes which contain provisions for reasonable or percentage attorneys' fees, and that the rule enunciated by the Supreme Court is strictly limited to such cases of negotiable instruments where money has been loaned.

It is also pointed out by counsel for defendant in error that the plaintiff in error being a corporation is not in a position to raise the question of usury because §8623-78 GC, provides that:

"**Usury.** The limitations of §8303 GC shall not apply to any corporate obligation for the payment of money maturing or payable in whole or in part one year or more after the date thereof, and no corporation, wherever organized, nor anyone in its behalf, shall interpose the defense or make the claim of usury in any suit, action or proceeding upon or with reference to any such obligation."

The language of §8303 GC which is the section dealing with the legal rate of interest which may be charged in Ohio, may be reasonably construed, as is contended by defendant in error, to be limited to parties to an instrument in writing for the payment of money at a future time. That is, an instrument which deals with no other subject except the payment of money at a future time. That a leasehold instrument which is not limited to the one subject only, namely, the payment of money at a future time, but contains a variety of mutual obligations agreed to and covenanted by the respective parties thereto, does not come within the purview of the usury statute.

When one considers the primary purpose

of §8303 GC which fixes the maximum rate of interest which parties may stipulate in certain instruments, it is quite clear that the legislature intended to guard embarrassed debtors aganist the greed and rapacity of harsh creditors. The need for such protection of debtors seems to us apparent in all cases where the relation of debtor and creditor is formed, whether it be by means of a bond, bill, promissory note, or other instrument of writing for the payment of money at any future time.

The argument presented by defendant in error, that the rule found in the adjudicated cases against the enforceability of a provision to pay attorneys' fees in addition to the legal rate of interest, is limited to cases of negotiable instruments where money has been loaned, would seem very plausible were it not for the language of §8303 GC which is, "the parties to a bond, bill, promissory note or other instrument of writing for the * * * payment of money at any future time * * *."

The section specifies promissory notes and bills of exchange. If it were true that the phrase, "or other instruments of writing for the payment of money at any future time" is limited to negotiable instruments only, there would have been no need for the specifying of bills and promissory notes which are, of course, embraced in the term "negotiable instruments." We are inclined to hold that any instrument in writing which contains an obligation to pay money at any future time is subject to the limitation of the section that the rate of interest to be stipulated shall not exceed 8% per annum.

It would therefore follow that the rule enunciated by our Supreme Court in the various cases cited against the enforceability of a provision of the payment of attorneys' fees in addition to the legal rate of interest, is applicable to a case such as the case at bar, and is not limited to negotiable instruments only. The argument that, by virtue of §8623-78 GC above cited, the plaintiff in error which is a corporation is not in a position to raise the question of usury, would seem sound were it nor for the limitation found in the language of said section which said, "shall not apply to any corporate obligation for the payment of money maturing or payable in whole or in part one year or more after the date thereof." The lease provides for the quarterly payment of rent and it would seem to us that it is an obligation which matures in less than one year and that therefore the plaintiff, though a corporation, may claim the benefit and protection of the usury statute.

In considering the second point made by plaintiff in error, namely, that this provision which is the basis of recovery of attorneys' fees in addition to the maximum rate of interest, is in the nature of a penalty, we must not lose sight of the purpose it seeks to accomplish. The leasehold instrument provides for mutual obligations of the contracting parties. The principal obligations of the lessee is to pay rent when the same falls due. When the lessee breaches his obligation to pay rent as provided in the lease, the lessor has the option to declare a forfeiture of the lease and sue for a breach of contract, or to sue for each installment of rent as the same falls due. The failure to pay rent as the same falls due, is unquestionably a breach of contract on the part of the lessee. The law attaches certain consequences to every breach of contract. The consequences attached by law to the breach of an obligation to pay money is invariably the payment of interest in addition to the principal sum which fell due. "Interest is the almost universal measure of damages for mere delay of payment." Sutherland on Damages, 4th Ed., Sec. 286.

If the lease contained no provision whatsoever as to the consequences which will follow the breach of the obligation on the part of the lessee to pay rent, the law would, nevertheless, attach the well recognized consequences, namely, the payment of interest in addition to the principal sum due. When the parties seek to prescribe consequences other than those which the law attaches to such a breach, and which are not in proportion to the actual damage suffered on account of it, such provision is usually viewed in the nature of a penalty and held to be unenforceable. It is only in cases where the damages, in the event of a breach, are uncertain and will apparently be difficult of ascertainment that the parties may, by agreement, fix in advance the amount of damages for the breach of contract.

The contention of defendant in error that the provision for the payment of attorneys' fees contained in the lease is in the nature of a principal obligation and that it should be viewed as an increased rental on the happening of a certain event, is not, in our opinion, well taken. The provision definitely deals with the consequences which attach to the breach on the part of a lessee of his obligation to pay rent when due. In other words, it seeks to establish a measure of damages other than that which the law provides.

There is no uncertainty about the damage suffered by the lessor on account of the

breach. It is not a matter concerning which courts or juries would be required to speculate. The legal rate of interest, by universal sanction, is made the measure of damages in all cases of a breach of an obligation to pay money when due. This attempt, on the part of the parties to this lease, to depart from the well recognized measure of damages which is the consequence prescribed by law for any such breach of a contract, cannot be upheld on the theory that it is a provision for liquidated damages.

We hold that unless the provisions prescribing the consequences of a breach of contract and specifying the measure of damages other than that which the law would apply, can be justified on the theory of liquidated damages, that the same is unenforceable because it would be regarded as a penalty only.

It may be observed that even though this provision found in the lease, wherein the parties attempted to prescribe their own measure of damages and calling for the payment of attorneys' fees in addition to a payment of interest, which is the measure of damages recognized by law, were to be regarded in the nature of a provision for liquidated damages, that there is a very serious flaw apparent therein. No adjudicated case can we find wherein a provision was viewed as one for liquidated damages even in proper cases where the amount of damages was not specified in dollars and cents.

The theory of courts in sustaining provisions for liquidated damages was to enable the parties to fix the amount of damages in all cases where the damages, in the event of breach, are uncertain and are difficult of ascertainment; that rather than leave the matter of awarding damages to the mere speculation and guess of courts and juries, the parties are permitted to stipulate in advance in all such cases.

In the case at bar the provision calls for reasonable attorneys' fees, without specifying the amount of attorneys' fees. It again leaves it in an uncertain state as to what courts and juries will regard as reasonable attorneys' fees. The provision cannot be regarded as one of liquidated damages, because the amount is left uncertain and still calls for future action by courts and juries to determine what, in their opinion, are reasonable attorneys' fees.

We are not in accord with the argument of counsel for defendant in error that this provision is in the nature of an increased rental on the happening of certain events because the clear language of the provision shows that it prescribes what shall be the consequences to the lessee for his breach of the obligation to pay rent when due. It deals with the measure of damages attaching to such breach. Since it cannot be regarded as a provision for liquidated damages and since he departs from the measure of damages which the law so clearly attaches to such a breach it can be regarded in no other light except that the same is in the nature of a penalty and is therefore unenforceable.

There is much strength in the last point made by counsel for plaintiff in error that if such provision for the payment of attorneys' fees were enforceable it would encourage creditors to institute litigation hastily and that therefore the same is against public policy.

In **Jeremiah Shelton v Joseph Gill et al, 11 Oh St, 417,** the court held that

"A stipulation in a warrant of attorney to pay collection fees, in addition to the principal debt and interest, is against public policy and void."

The various arguments presented by plaintiff in error are clearly expressed in the case of Raleigh County Bank v Poteel, 82 S. E., 332 (W. Va.),—. The clear reasoning of the decision induces us to adopt its language and to quote therefrom at length as follows:

"Having specified what may be recovered, whether the common law should have permitted more or not, by its prescription of rules, the legislature has impliedly negatived any supposed right to obtain anything in addition thereto. The detriment to the payee or holder, resulting from default in payment is compensated as fully as legislature intended it to be, by costs and fees prescribed by statute, wherefore, there can be consideration for the promise, even in the sense of detriment. Viewed as a contract of indemnity, the stipulation fails on the same principle. It is indemnity against what a debtor, unable or unwilling to pay, has a legal right to do, avail himself of the delay in payment accorded him by law, subjecting himself to the incidental punishment inflicted in the form of costs and fees prescribed and recoverable. The legal, though not moral right of the debtor, precludes the existence of any consideration for the contract, as one of indemnity, and the agreement amounts to no more than one to balance the burden imposed by law upon the person in whose favor it is made, an agreement to pay something for nothing. For reasons of public policy, the legislature has, in effect, declared that the lender or creditor, shall take the risk or expense of

collection, in excess of the allowance it has made by way of indemnity or reimbursement. It has not left the matter in the hands of the parties to be made by agreement. It has acted on the subject itself and has declared its will, for the same reason that impelled it to act upon the subject of interest, to the end that there should be no door open to oppression and undue advantages, attended by constant temptation to money lenders to mistake the law of usury, and on the part of collectors to encourage litigation and inflict unnecessary costs and expenses, amounting to, in an economic sense, waste and loss. It would encourage the employment of collectors and lawyers, and be an inducement to attorneys to seek claims for collection and institute actions unnecessarily."

'For the reasons set forth above, the judgment of the Common Pleas Court is ordered modified, so as to disallow attorneys' fees.

VICKERY, PJ, and WEYGANDT, J, concur.