**The CIT GROUP/EQUIPMENT
FINANCING, INC.,
Plaintiff,**

v.

**NEW GIFL, INC., et al., Defendants.**

**No. 5:93 CV 498.**

United States District Court,
N.D. Ohio, E.D.

June 8, 1993.

Perry B. Newman and Alan S. Kopit, Hahn, Loeser & Parks, Cleveland, OH, for plaintiff.

Marc P. Gertz, Goldman & Rosen, Akron, OH, and Steven Potash, Beachwood, OH, for defendants/cross defendants.

### ORDER

SAM H. BELL, District Judge.

The above-captioned matter was commenced with the filing of a complaint on the 8th of March, 1993. In that document, plaintiff alleges that the defendants have breached a lease agreement and personal guaranty in an amount greater than that needed to invoke this court's diversity jurisdiction, the basis for jurisdiction over plaintiff's claims. Currently before the court is plaintiff's motion for summary judgment, Docket # 12 and defendant Dworkin's response thereto, Docket # 14. The following opinion is devoted to plaintiff's motion.

### STANDARD OF REVIEW

In reviewing a motion for summary judgment, a court must consider the pleadings,

related documents, evidence, and all reasonable inferences in a manner most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979). Rule 56 provides, in relevant part, as follows:

(c) ...

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

. . . . .

(e) ...

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Three Supreme Court cases have provided guidance as to the nature of the respective burdens allocated under Rule 56. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The ultimate burden lies with the non-moving party to show the existence of a genuine issue of material fact. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*' Fed.Rule Civ.Proc. 56(e)." *Matsushita,* 475 U.S. at 586–587, 106 S.Ct. at 1356 (emphasis supplied). "In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The court in *Anderson* held that "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff had had a full opportunity to conduct discovery." *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514.

On the other hand, the moving party's burden under Rule 56 is lighter.

Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. But unlike the Court of Appeals, we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. On the contrary, Rule 56(c) ... suggests the absence of such a requirement.

*Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2553 (emphasis supplied).

The Sixth Circuit Court of Appeals, in *Street v. J.C. Bradford and Co.,* 886 F.2d 1472 (6th Cir.1989) recently reviewed court decisions and commentary regarding the impact of *Anderson, Celotex,* and *Matsushita* on summary judgment practice. The court concluded that a "new era" in summary judgment practice has opened in the court system as a result of these opinions.

Scholars and courts are in agreement that a "new era" in summary judgments dawned by virtue of the Court's opinions in these cases ... On the whole, these decisions reflect a salutary return to the original purpose of summary judgments. Over the years, decisions requiring denial of summary judgment if there was even a

suggestion of an issue of fact and tended to emasculate summary judgment as an effective procedural device.

*Street, supra,* at 1476.

The court enunciated the following "new era" principles, among others: as on federal directed verdict motions, the "scintilla" rule applies, *i.e.,* the respondent must adduce more than a scintilla of evidence to overcome the motion; the respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment"; the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact. *Id.* at 1479–1480 (footnotes and citations omitted).

## LAW AND ANALYSIS

The facts alleged in plaintiff's complaint and motion are unrebutted. The following constitutes a precis of those facts as verified by the affidavit of Robert Thomas.

On October 18, 1988, General Title and Trust Company ("General") leased certain equipment to corporations known as Sid's Get It For Less, Inc. ("Sid's") and New Jax Corporation–1 ("New Jax"), pursuant to a Master Lease Agreement and Lease Schedule Number 586–2. (Complaint Exhibit A) On October 28, 1988, Sid's assigned to Defendant GIFL all of Sid's interests and rights in and to the Master Lease and Schedule, pursuant to an Assignment of Equipment Lease Agreement. (Complaint Exhibit B) Also on October 28, 1988, New Jax assigned to Defendant 3957 New Jax's interest and rights in and to the Master Lease and Schedule. (Complaint Exhibit C).

On December 7, 1988, pursuant to an Assignment Agreement, New Jax Corporation dba Sid's assigned certain rights under an "NCR Universal Agreement to General, pursuant to which General acquired, *inter alia,* New Jax's right to purchase certain equipment comprising equipment to be leased by General to New Jax under the Master Lease. (Complaint Exhibit D).

On February 8, 1989, Defendant Dworkin executed a Guaranty in favor of Plaintiff and General of all obligations due and to become due under the Master Lease and Schedule and of all other obligations of 3957 and GIFL owed to Plaintiff. (Complaint Exhibit E) On February, 17, 1989, General executed a Secured Promissory Note in favor of Plaintiff, pursuant to which General agreed to pay Plaintiff the principal sum of Six Hundred Twenty Thousand One Hundred Ninety-Four Dollars and 69/100 ($620,294.69) according to the terms of that Secured Promissory Note. (Complaint Exhibit F). Also on February 17, 1989, pursuant to a Security Agreement (Chattel Mortgage and Assignment of Lease), in order to secure its obligation to Plaintiff under the Secured Promissory Note, General granted to Plaintiff a security interest in all of General's right, title and interest in, *inter alia,* the equipment leased by General to Defendants GIFL and 3957 and assigned to Plaintiff all of General's right, title and interest in that equipment as well as General's rights to payments under the Master Lease. (Complaint Exhibit G).

As contemplated by the aforementioned documents executed by the parties, GIFL and 3957 began making required monthly rental payments to Plaintiff in the amount of Fourteen Thousand Two Hundred Twenty-Two Dollars and 09/100 ($14,222.09), in April 1989. (Thomas Aff. at ¶ 8 and exhibits attached thereto) On October 21, 1992, however, owing to Defendant GIFL's and Defendant 3957's failure to make payments required for the months of September 1992 and October 1992, Plaintiff sent notice to Defendants GIFL and 3957 demanding immediate payment of the overdue installments and late charges, which at the time totalled Thirty-Eight Thousand Four Hundred Twenty-Two Dollars and 47/100 ($38,422.47). (Complaint Exhibit H) On October 28, 1992, Plaintiff sent notice to Defendant Dworkin of the aforementioned defaults of GIFL and 3957 and made demand upon Dworkin for the immediate payment of the overdue installments and late rental charges.

At various times thereafter, Plaintiff either by itself or by and through counsel notified all Defendants of GIFL's and 3597's failure

to cure repeated defaults in payment under the Master Lease and, in the case of Defendant Dworkin, Dworkin's failure to honor the terms of his Guaranty. (Complaint Exhibits J and K)

Despite these demands, the defendants have failed to pay plaintiff and currently owe plaintiff the sum of One Hundred Eighty-One Thousand Eight Hundred Seven Dollars and 31/100 ($181,807.31) as of the date of the filing of the complaint.

The plaintiff has moved for summary judgment on all counts of its complaint.[1] Hence, we must here determine whether GIFL and 3597 are liable in identified damages for breach of the Master Lease and Schedule, whether Dworkin is liable for the same amount upon his guaranty, and whether all defendants are subject to a declaration of liability for the plaintiff's costs and attorney's fees under Ohio law.[2] Our answer to the first two questions is in the affirmative.

The unrebutted facts advanced by plaintiff clearly entitle it to judgment on its primary claims. Indeed, neither GIFL nor 3597 have responded to the plaintiff's motion, rendering judgment unquestionably appropriate. *See Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir.1992) (when there is "a dispositive motion in want of a response ... a court's reliance on the facts advanced by the movant is proper and sufficient.") There simply is no genuine issue of fact regarding liability or amount. While Dworkin has responded to the instant motion, he has not disputed the facts advanced by plaintiff, but rather argues:

> At the time of Mr. Dworkin's offering of his personal guaranty the extension of new money was not complete. From the pleadings alone it is apparent that the claims for

which Plaintiff seeks relief are for transaction that may not be covered by the guaranty which they seek to enforce.

.    .    .    .    .

A review of the complaint and Plaintiff's own motion and Affidavit raises substantial issues of fact with respect to application of the personal guaranty of Defendant Sidney Dworkin as it relates to the promissory note executed on February 18, 1989, Exhibit F of its complaint. Plaintiff fails to relate its cause of action stemming from the secured promissory notes entered into by a non-party to the personal guaranty of Defendant Dworkin. These issues raise a material and genuine issue of fact for which Defendant respectfully urges this Court to deny Plaintiff's motion.

(Defendant Dworkin's Opposition Memorandum, at 2–3)

The court cannot agree with defendant's reasoning. First, Mr. Dworkin's contractual obligation:

> unconditionally guarantees to [plaintiff] that the [defendant corporations] will fully and promptly pay and perform all its present and future obligations to you, whether direct or indirect, joint or several, absolute or contingent, secured or unsecured, matured or unmatured and whether originally contracted with you or otherwise acquired by you etc. . . . .

(Dworkin Guaranty, Complaint Exhibit E). Likewise, the unrebutted material facts are that Mr. Dworkin, to the explicit benefit of CIT, personally guaranteed the present and future obligations of the corporate defendants, upon which they have defaulted. The benefit of the note and chattel mortgage agreement seems fairly obvious to the court.[3]

---

**1.** Plaintiff's motions states that it seeks summary judgment on "Counts I, II and III of its Complaint, based upon the Defendant's liability for the unpaid balanced ... on the Master Lease and Guaranty" and on "the issue of liability as to Counts IV and V of the Complaint" regarding defendants' obligation "to pay Plaintiff's attorneys' fees and costs . . . ." (Plaintiff's Motion at 2 n. 1) The court presumes this is a clerical error, no amended complaint having been filed. Plaintiff's complaint contains only four counts: (1) breach of contract against GIFL and 3597, (2) breach of guaranty agreement by Dworkin, (3)

attorneys' fees and costs claim against GIFL and 3597, and (4) attorneys' fees and costs against Dworkin. This apparent error, however, does not prevent us from considering whether plaintiff is entitled to judgment as a matter of law.

**2.** Ohio law unquestionably governs this action. *See infra* at 483.

**3.** The note was secured by the mortgage which provided, in pertinent part:

> The Borrower agrees that all Lease Payments due after the date hereof shall be made by

Plaintiff's purported failure "to relate its cause of action" to the secured note raises neither a genuine issue, nor one relative to a material fact in issue. As noted by Justice White, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 247–248, 106 S.Ct. at 2510. Further, to raise a genuine issue on a material point, the non-moving party may not rest on his pleadings or criticism, but must "by affidavit ... set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e), *see also Anderson, supra,* at 248, 106 S.Ct. at 2510. These instructions are surely germane to the instant action. There are no genuine issues of fact material to counts one and two of plaintiff's complaint. Accordingly, summary judgment on those claims shall be granted.

There is equally no factual dispute as to the defendants' liability for the costs and attorneys' fees as envisioned by the documents sued upon. Paragraph 16 of the Master Lease obligates the corporate defendants to pay expenses and fees incurred by its breach. (Complaint, Exhibit A at ¶ 16). Similarly, the Guaranty executed by Dworkin promises to pay "all sums due and to become due to you from the Company and all losses, costs, attorneys' fees or expenses which may be suffered by [plaintiff] by reason of the Company's default or default of any of the undersigned [Dworkin]." (Complaint, Exhibit E) But the moving party, without comment by the responding defendant, has mischaracterized the law applicable to these claims for attorney's fees.[4]

Plaintiff, citing Fifth and Seventh Circuit cases, states:

> Lessee directly to Secured Party, and Borrower agrees to direct Lessee to make such payments directly to Secured Party. At any time that Lessee may be in default, Secured Party also may exercise, at any time and from time to time, such rights, powers, and remedies of Borrower as Lessor under the Lease as Secured Party may, in its sole discretion, deem appropriate.

(Complaint, Exhibit G at ¶ 3).

Because there is no dispute as to the authenticity or enforceability of any of these agreements, nor with regard to any issue of material fact, Plaintiff is entitled to summary judgment imposing liability upon all Defendants for Plaintiff's attorneys fees and costs incurred, in an amount to be proven by evidence to be filed with the Court upon the entry of judgment herein.

(Plaintiff's Motion at 7). The court must disagree.

The plaintiff has filed and pursued this case as one premised upon this court's diversity jurisdiction. (*See, e.g.,* Complaint at ¶ 5) As such, we must apply the choice-of-law principles of the forum. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Tele–Save Merchandising Co. v. Consumers Distributing Co., Ltd.,* 814 F.2d 1120, 1122 (6th Cir.1987). The Master Lease Agreement and assignments, which forms the basis of this suit, were executed in Ohio by corporations formed in or having their principal place of business in Ohio. (Complaint Exhibits A, B, C) The Master Lease Agreement provides:

> *Applicable Law.* This lease has been and each Schedule have been made, executed and delivered in the State of Ohio and shall be governed and construed for all purposes under and in accordance with the laws of the State of Ohio.

(Complaint Exhibit A at 11). In Ohio:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied unless either the chosen state has no substantial relationship to the parties or the transaction and there is no reasonable basis for the parties choice, or application of the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the cho-

---

4. Rule 11 states, in pertinent part, that "[t]he signature of an attorney ... constitutes a certificate by the signer ... that to the best of the signer's knowledge, information and belief *formed after reasonable inquiry,* it is ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...." Fed.R.Civ.P. 11.

sen state and such state would be the state of the applicable law in the absence of a choice by the parties.

*Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.,* 6 Ohio St.3d 436, 6 O.B.R. 480, 453 N.E.2d 683 (1983) (syllabus).[5] *See also Jarvis v. Ashland Oil, Inc.,* 17 Ohio St.3d 189, 478 N.E.2d 786 (1985) ("Where the parties to a contract have made an effective choice of the forum law to be applied, the Restatement of the Law 2d, Conflict of Laws (1971) 561, Section 187(2), will not be applied to contravene the choice of the parties as to the applicable law."); *Sekeres v. Arbaugh,* 31 Ohio St.3d 24, 508 N.E.2d 941 (1987) (attorney's fee case). The facts before the court indicate, and no party has suggested otherwise, that the exceptions to the enforceability of the contractual choice-of-law provision are not applicable to the instant case. Accordingly, Ohio law controls this action. *See Tele–Save Merchandising Co. v. Consumers Distributing Co., Ltd.,* 814 F.2d 1120, 1122 (6th Cir.1987) ("Ohio choice-of-law principles strongly favor upholding the chosen law of the contracting parties."); *Citizens Federal Bank, F.S.B. v. Commercial Mortgage Ins., Inc.,* 972 F.2d 346 (6th Cir.1992) (table case) ("The [Ohio district court] applied Wisconsin law to the contract because of the choice of law provision in the policy. This would be correct under the forum's choice of law principles if this were a contract claim."); *see also Basicomputer Corp. v. Scott,* 791 F.Supp. 1280 (N.D.Ohio 1991) (Bell, J.), *aff'd,* 973 F.2d 507 (6th Cir.1992).

■ With this established, we turn to the claims at hand. The attorney's fees provisions providing the basis for plaintiff's counts three and four are contained in Master Lease Agreement and the Guaranty of Dworkin. Plaintiff's ability to recover under those provisions, of course, depends upon their enforceability under state law. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622 n. 31, 44 L.Ed.2d 141 (1975). *See, e.g., Interstate Life & Accident Insurance Co. v. RKO Teleradio Pictures, Inc.,* 318 F.2d 73 (6th Cir.

1963) (Weick, J.), *cert. denied,* 375 U.S. 945, 84 S.Ct. 352, 11 L.Ed.2d 275 (1963). The court believes it is well established that Ohio has long taken a dim view of contractual attorney's fees provisions. *See Sekeres v. Arbaugh,* 31 Ohio St.3d at 30, 508 N.E.2d 941 (Brown, J., dissenting):

> [T]he rule in Ohio has been well-settled since 1841 that provisions similar to those [defendant] seeks to take advantage of are against public policy and void. In *State v. Taylor* (1841), 10 Ohio 378, the Ohio Supreme Court struck down a contractual provision to pay a five percent attorney collection fee in addition to legal interest for money loaned. *See, also, Shelton v. Gill* (1842), 11 Ohio 417; *Martins v. Trustees of Bank of St. Clairsville* (1844), 13 Ohio 250. In *Leavans v. Bank* (1893), 50 Ohio St. 591, 34 N.E. 1089, this court held that a stipulation in a mortgage which allowed an attorney fee in an action brought to foreclose it was against public policy and void.

More recently, in *Miller v. Kyle* (1911), 85 Ohio St. 186, 192, 97 N.E. 372, this court said:

> "In this state it has been firmly established, and long and consistently maintained, that such contracts for the payment of counsel fees upon default in payment of a debt will not be enforced."

(citation form in original) The *Miller v. Kyle* holding, quoted above, retains strength to this day. As the Ohio Supreme Court recently noted:

> When a stipulation to pay attorney fees is incorporated into an ordinary contract, *lease,* note or other debt instrument, it is ordinarily included by the creditor or a similar party to whom the debt is owed and is in the sole interest of such party. In the event of a breach or other default on the underlying obligation, the stipulation to pay attorney fees operates as a penalty to the defaulting party and encourages litigation to establish either a breach of the agreement or a default on the obligation. In those circumstances, the prom-

---

**5.** In Ohio, courts must follow the principles set forth in the syllabi of Ohio Supreme Court opinions; the syllabi, not the body of the opinion

states the law of the case. *Smith v. Klem,* 6 Ohio St.3d 16, 450 N.E.2d 1171 (1983).

ise to pay counsel fees is not arrived at through free and understanding negotiation.... Consequently, our decision today leaves undisturbed our holding in *Miller v. Kyle, supra,* and like cases.

*Worth v. Aetna Casualty & Surety Co.,* 32 Ohio St.3d 238, 242–43, 513 N.E.2d 253 (1987).[6]

Despite this language and the wealth of older Ohio case law contrary to plaintiff's position[7], Ohio courts are now apparently divided on the issue of the enforceability of fee provisions in commercial lease agreements. *See 2044 Euclid Partners v. Williamson,* 1986 WL 4386 (Cuyahoga Cty.App. 1986) ("a [lease agreement] to pay the attorney fees of another ... [is] not enforceable in this state.") (alternative holding). *See also Federal Deposit Ins. Corp. v. Timbalier Towing Co., Inc.,* 497 F.Supp. 912, 929 (N.D.Ohio 1980) (Contie, J.) ("Ohio ... prohibits the enforcement of express agreements for recovery of attorney's fees for breach of a simple contract."); *AMF, Inc. v. Computer Automation, Inc.,* 573 F.Supp. 924, 934 (S.D.Ohio 1983) (Rice, J.); *Driggs v. Credit Alliance Corp.,* 591 F.Supp. 1221, 1228 (N.D.Ohio 1984) (Potter, J.); *American Nursing Care of Toledo v. Leisure,* 609 F.Supp. 419, 433 (N.D.Ohio 1984) (Potter, J.) ("It is well settled that in Ohio any stipulation to pay attorney's fees as part of the costs of an action or an obligation is contrary to public policy."). *But see Ogle Leasing Co. v. Submarine Galley, Inc.,* 1991 WL 355159 (Ohio App.2nd Dist.1991); *GMS Management Co., Inc. v. K & K Industries, Inc.,* 1991 WL 70154 (Stark Cty.App.1991); *State ex. rel. Celebrezze v. Tele–Communications, Inc.,* 62 Ohio Misc.2d 405, 438, 601 N.E.2d 234 (Ohio Ct. of Claims 1990). Apparently, then, Ohio courts are divided on the issue of whether an attorney fee-shifting provision in a commercial lease agreement is enforceable in this state.

There is, no doubt, a wealth of Sixth Circuit opinions dealing with the *Erie* doctrine rule that we follow state law in diversity

cases. Variously expressed, it is incumbent upon this court to follow the precedent of the state's highest court. *Janikowski v. Bendix Corp.,* 823 F.2d 945, 948 (6th Cir.1987). When, as is the case here, the Ohio Supreme Court has not addressed the precise issue before the court, "the opinions of intermediate appellate courts provide the next best indicia of the state's position." *Matulin v. Village of Lodi,* 862 F.2d 609, 616 (6th Cir. 1988). These opinions control "unless other persuasive factors convince the federal court that the state's highest court disagree with the appellate court determinations." *Id.* This rule applies regardless of whether the appellate court decision is published or unpublished. *Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1485 (6th Cir.1989). Here, however, there is no on-point decision by the Ohio Supreme Court and Ohio appellate courts are divided on their approach to our issue. In such a situation, it is believed that the district court must predict how the state's highest court would rule on the matter at hand. *See Diggs v. Pepsi–Cola Metropolitan Bottling Co.,* 861 F.2d 914, 929 (6th Cir.1988) (Merritt, J., concurring in part and dissenting in part) ("Confusion in the state intermediate courts should not deter us from deciding in a diversity case what the state's highest court would do."); *Olsen v. McFaul,* 843 F.2d 918, 929 (6th Cir.1988).

As noted above, Ohio has, for some time, taken a dim view of attorney's fees provisions. *See Sekeres,* 31 Ohio St.3d at 29–31, 508 N.E.2d 941 (Brown, J., dissenting) While the Ohio rules appears to be at odds with much of the law on this subject nationwide, that fact alone does not allow us to predict the Ohio Supreme Court's eventual view on the subject before us. *See Baab v. AMR Services Corp.,* 811 F.Supp. 1246, 1267 (N.D.Ohio 1993) ("At this point it must be noted that the *Kerans [v. Porter Paint Company]* case [61 Ohio St.3d 486, 575 N.E.2d 428 (1991) ] is at odds with the precepts of the common law. Whether this be so or not

---

6. In *Worth,* the Ohio Supreme Court held that an indemnitor's express agreement to indemnify an indemnitee for qualified legal expenses incurred is enforceable and is not contrary to Ohio's public policy.

7. *See, e.g., Midwest Properties Co. v. Renkel,* 38 Ohio App. 503, 176 N.E. 665 (Cuyahoga Cty.App. 1930).

so in the mind of this court, it is not relevant. The opinion of this court on the question posed in the request for summary judgment is one which is governed by the law of Ohio as stated by the Supreme Court of that state.") *See also Wayne Smith Construction Co, Inc. v. Wolman, Duberstein & Thompson,* 65 Ohio St.3d 383, 604 N.E.2d 157 (1992) (novel partnership liability case). The question here, of course, is what the Ohio Supreme Court would do with the case at hand.

The courts enforcing fee provisions in lease agreements have done so on the basis of the Ohio Supreme Court's opinion in *Nottingdale Homeowners' Association v. Darby,* 33 Ohio St.3d 32, 514 N.E.2d 702 (1987). *See, e.g., Tele-Communications,* 62 Ohio Misc.2d at 438, 601 N.E.2d 234 ("The issue then becomes whether a [lease] clause apportioning attorney fees is enforceable between the parties. The Ohio Supreme Court recently considered this very issue in *Nottingdale....*"); *GMS Management Co., Inc.,* 1991 WL 70154 at * 3 ("Although *Nottingdale* was specifically limited to a non-commercial transaction, we believe that it would be illogical to hold unenforceable a contractual provision for the payment of attorneys' fees in a commercial transaction where there is no evidence of unequal bargaining positions and no evidence of compulsion or duress.") The court has some difficulty with this reasoning.

The Supreme Court, in *Miller v. Kyle,* 85 Ohio St. 186, 97 N.E. 372 (1911), held:

It is the settled law of this state that stipulations incorporated in promissory notes for the payment of attorney fees, if the principal and interest be not paid at maturity, are contrary to public policy and void.

(syllabus ¶ 1) This principle was extended to a variety of commercial transactions and induced one court, in a lease agreement fee clause case, to comment:

[T]here should be no open door to oppression and undue advantages, attended by constant temptation to money lenders, to violate the law against usury, and on the part of collectors, to encourage litigation and inflict unnecessary costs and expenses amounting, in an economic sense, to waste and loss. It would encourage the employ-

ment of collectors and attorneys and be an inducement to attorneys to seek claims for collection and institute actions unnecessarily.

*Midwest Properties Co. v. Renkel,* 38 Ohio App. at 515, 176 N.E. 665. In 1987, one month before the *Nottingdale* decision, the Supreme Court specifically left "undisturbed our holding in *Miller v. Kyle, supra,* and like cases". *Worth v. Aetna Casualty & Surety Co.,* 32 Ohio St.3d at 243, 513 N.E.2d 253. In so doing, the Court commented that:

When a stipulation to pay attorney fees is incorporated into an ordinary contract, *lease,* note or other debt instrument, it is ordinarily included by the creditor or a similar party to whom the debt is owed and is in the sole interest of such party. In the event of a breach or other default on the underlying obligation, the stipulation to pay attorney fees operates as a penalty to the defaulting party and encourages litigation to establish either a breach of the agreement or a default of the obligation. In those circumstances, the promise to pay counsel fees is not arrived at through free and understanding negotiation.

*Id.* at 242–243, 513 N.E.2d 253 (emphasis added). One month later, the Supreme Court revisited the *Miller v. Kyle* case in *Nottingdale.* The holding in *Nottingdale* is quite narrow, to wit:

Provisions contained within a declaration of condominium ownership and/or condominium by-laws requiring that a defaulting unit owner be responsible for the payment of attorney fees incurred by the unit owners' association in either a collection action or a foreclosure action against the defaulting unit owner for unpaid common assessments are enforceable and not void as against public policy so long as the fees awarded are fair, just, and reasonable as determined by the trial court upon full consideration of all the circumstances of the case.

*Nottingdale Homeowners' Association v. Darby,* 33 Ohio St.3d at 32, 514 N.E.2d 702 (syllabus) The *Nottingdale* Court distinguished the *Miller* opinion by noting that

that case, unlike *Nottingdale,* "deals with a commercial transaction...." *Id.* at 35, 514 N.E.2d 702. *See also GMS Management Co., Inc.,* 1991 WL 70154 at * 3 (*"Nottingdale* was specifically limited to a non-commercial transaction....") This analysis of these cases leads the court to a conclusion not reached by all Ohio appellate courts. Simply put, the Ohio Supreme Court has specifically refused to overrule *Miller* and its progeny and in fact has left those cases undisturbed.[8] Apparently, then, the force of the recent Ohio Supreme Court decisions is not so broad as is envisioned by some Ohio appeals courts. Rather than change the common law rule, the Ohio Supreme Court has carved out exceptions to the general rule of unenforceability. *See Buckeye Federal Savings & Loan Ass'n v. Guirlinger,* 1991 WL 4938 (Franklin Cty.App.1991) The general rule of unenforceability will presumably apply when the provision at issue arises from a "commercial lease". There is no doubt that the Master Lease Agreement is an ordinary commercial lease containing an attorney fee-shifting stipulation which is to the sole benefit of the creditor/lessor. (*See* Complaint Exhibit A at 9 ("Lessee shall reimburse Lessor for all costs and expenses incurred in connection with the enforcement of any right or remedy under this Lease, including reasonable attorneys' fees.") As such, this provision is void as against the public policy of Ohio. Summary judgment shall therefore be denied on count three of plaintiff's complaint.

■ The foregoing conclusion, however, does not end our inquiry. Plaintiff also seeks fees from Dworkin as provided for in his guaranty. The court believes this claim may be handled in short order. This court's research reveals only one Ohio opinion on the matter at hand. In *Buckeye Federal Savings & Loan Ass'n v. Guirlinger,* 1991 WL 4938 (Franklin Cty.App.1991), the Franklin County Court of Appeals confronted the very issue we address here. There, the common pleas court enforced an attorney's fees provision in a guaranty, in which "defendant un-

conditionally and absolutely agreed to pay costs and expenses, including attorney's fees, incurred by plaintiff in connection with the collection or enforcement of the [guaranteed] loans." *Guirlinger,* 1991 WL 4938 at *1. On appeal, "[t]he essence of the defendant's argument ... [was] that the provisions in the guaranty agreements regarding the payment of attorney fees are contrary to the public policy of this state as pronounced in *Miller v. Kyle* (1911), 85 Ohio St. 186 [97 N.E. 372]." *Id.* The plaintiff/appellee "maintain[ed] that provisions regarding attorney fees in the context of guaranty agreements are valid and binding since such provisions are in the nature of indemnity ... [and that] ... the Supreme Court concluded in *Worth* [32 Ohio St.3d 238, 513 N.E.2d 253 (1987)] that agreements to indemnify a party's legal expenses, including attorney's fees, does not fall within the prohibition of *Miller, supra." Id.* The Franklin County Court rejected the plaintiff's argument, stating in pertinent part:

A contract of guaranty against loss occasioned by default in the payment of a promissory note constitutes an agreement to answer for the debt undertaken by the maker of the note. *See Galloway v. Barnesville Loan, Inc.* (1943), 74 Ohio App. 23, 28 [57 N.E.2d 337]. *Cf. Solomon Sturges & Co. v. The Bank of Circleville* (1860), 11 Ohio St. 153, 168–69. Under the common law, the liability of a guarantor of a promissory note is secondary to that of the principal debtor, arising only upon the debtor's default in paying the note.... Thus, although the contract of the guarantor is distinct from the contract of the maker of a note, a guaranty contemplates an underlying obligation to assume liability for the debt of the maker upon default.

Indemnity, on the other hand, arises by contract and creates a right of reimbursement in favor of the indemnitee who is paid what the indemnitor should have paid. *Travelers Indemnity Co. v. Trowbridges* (1975), 41 Ohio St.2d 11, [321 N.E.2d 787]

---

8. Indeed, the most strident language in *Nottingdale* seems to have clearly left open the question *sub judice:*

A rule of law which prevents parties from agreeing to pay the other's attorney fees, ab-

sent a statute or *prior declaration of this court to the contrary* is outmoded, unjustified and paternalistic.

*Nottingdale,* 33 Ohio St.3d at 37, 514 N.E.2d 702.

paragraph one of the syllabus. An indemnitor against loss agrees to hold the indemnitee harmless from loss occasioned by specified acts or occurrences. *See Worth, supra,* [32 Ohio St.3d], at 240 [513 N.E.2d 253]. In so agreeing, the indemnitor undertakes an independent obligation which is not contingent upon the performance of an underlying obligation.

Here, the instruments denominated "Guaranty Agreement" are premised upon the underlying obligation of [the debtor] to pay notes when due. Defendant's liability to pay the notes arose only upon the default in payment by [the debtor]. Although defendant's contractual liability for payment of the notes was an independent undertaking, defendant's liability nevertheless was contingent upon [the debtor's] default in its obligation. Thus, in light of the distinction between indemnity and guaranty, the nature of the agreements executed in this case is one of guaranty rather than of indemnity.

Having determined that the instruments executed by defendant constitute guaranties of payment, it is apparent that these agreements constitute contracts for payment of a debt. As such, they fall squarely within the ambit of *Miller, supra.* ...
Since defendant's guaranties are contracts for payment of debts, the provisions for payment of plaintiff's attorney fees in collecting the debts by way of cognovit judgment are void as against public policy.

*Id.* at ** 2–3. This opinion provides the law governing the issue here and, it is believed, properly disposes of plaintiff's fourth count.

As noted above:

[w]here a state's highest court has not spoken on a *precise* issue, a federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1485 (6th Cir.1989) (emphasis added); *see also Stychno v. Ohio Edison Co.,* 806 F.Supp. 663 at n. 9 (N.D.Ohio 1992) (Bell, J.). As this court has previously noted, when:

we are beneficiaries of an opinion by an Ohio appellate court ... [we] are obligated

to follow its precedent absent countervailing arguments which convince this court that the state's highest court would rule to the contrary.

*New York Life Ins. Co. v. Wittman,* 813 F.Supp. 1287, 1296 (N.D.Ohio 1993) This court cannot perceive, and plaintiff has not identified, any compelling reason why the opinion of the Franklin County court should be disregarded. Accordingly, plaintiff's claim for attorney's fees as provided in the guaranty of Dworkin is barred under Ohio law.

## CONCLUSION

The Supreme Court has succinctly stated that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'". *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The court must conclude that this is such a case. Accordingly, the plaintiff's motion for summary judgment, Docket # 12, is **GRANTED IN PART AND DENIED IN PART.**

Judgment is **GRANTED** in plaintiff's favor on counts one and two of the complaint. The remaining counts in the complaint are premised upon provisions which are in contravention of Ohio's public policy and are **VOID.** Consequently, judgment on counts three and four is **DENIED.** Plaintiff's case is terminated in its entirety. The entire case, unfortunately, is not concluded. In his answer, Sidney Dworkin has raised a cross-claim for reimbursement from the corporate defendants. Due to the diverse citizenship of the parties to that claim, it appears that this claim properly invokes not only the ancillary, but also the independent subject matter jurisdiction of this court. Consequently, Dworkin's cross-claim shall not be dismissed. *See American Nat'l Bank & Trust Co. of Chicago v. Bailey,* 750 F.2d 577 (7th Cir.1984) (Posner, J.), *cert. denied,* 471 U.S. 1100, 105 S.Ct. 2324, 85 L.Ed.2d 842 (1985).

IT IS SO ORDERED.